Argued and submitted October 27, 2004, on appeal, order of circuit court dismissing the indictment and judgment of acquittal reversed, and case remanded for further proceedings; cross-appeal dismissed June 16, 2005

### STATE OF OREGON,
*Appellant / Cross-Respondent,*

v.

### SEBASTIAN ALEXANDER SHAW,
*Respondent / Cross-Appellant.*

### (CC 010331742; SC S51416)

113 P3d 898

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant/cross-respondent. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Richard L. Wolf, Portland, argued the cause and filed the brief for respondent/cross-appellant.

CARSON, C. J.

## CARSON, C. J.

The first issue in this criminal case is whether the trial court erred by dismissing with prejudice an indictment charging defendant with aggravated murder after the state refused to proceed with the prosecution because it intended to appeal a pretrial exclusionary ruling that the trial court had made. If the trial court did err by dismissing the indictment with prejudice, then the second issue is whether the trial court erred by excluding the testimony of a certain state witness pursuant to OEC 403.[1]

Shortly before defendant's aggravated murder trial was scheduled to begin, the state sought a pretrial ruling concerning the admissibility of evidence of other crimes by defendant that the state planned to offer during the guilt phase of defendant's trial to prove defendant's motive and intent. The trial court ruled that, under OEC 404(3),[2] the state was entitled to introduce evidence of defendant's other crimes for those noncharacter purposes. The trial court further ruled, however, that the state could not prove one of defendant's other crimes through the testimony of the surviving victim because that victim's personal testimony would be unfairly prejudicial under OEC 403.

The state moved for a continuance to appeal the trial court's OEC 403 ruling to this court. After concluding that its OEC 403 ruling was not appealable, the trial court denied the state's motion. The state then informed the trial court that, without the testimony of that other crime victim, it would not proceed with the prosecution of the case. Defendant moved to dismiss the indictment, and the trial court dismissed the

---

[1] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[2] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

indictment without prejudice. Subsequently, citing the state's "inexcusable neglect in its handling of this prosecution" and the prejudice to defendant that further delay of his trial would cause, the trial court granted defendant's motion for a dismissal with prejudice and entered a judgment of acquittal pursuant to ORS 136.130, set out *post*.

The state now appeals to this court the trial court's dismissal order and judgment of acquittal, as well as the trial court's underlying OEC 403 ruling. *See* ORS 138.060(2) (authorizing state appeals to this court from certain pretrial rulings in murder and aggravated murder prosecutions). Defendant challenges this court's jurisdiction to hear the state's appeal and, on cross-appeal, raises 15 assignments of error relating to other pretrial rulings that the trial court made. *See* ORS 138.040 (providing that defendant may cross-appeal when state appeals pursuant to ORS 138.060(2)(a)).

For the reasons explained below, we conclude that ORS 138.060(2) authorizes the state's appeal to this court. On the merits, we reverse the trial court's order dismissing the indictment and entering a judgment of acquittal, and also reverse the trial court's OEC 403 ruling. With the exception of his challenge to the relevance of the state's other crimes evidence, we decline to address the merits of the assignments of error that defendant raises on cross-appeal.

## I. FACTS AND PROCEDURAL BACKGROUND

On March 9, 2001, the state charged defendant with one count of aggravated murder, ORS 163.095(2)(d),[3] for the death of Rickbeil, on the theory that defendant intentionally

---

[3] ORS 163.095 provides, in part:

"As used in ORS 163.105 and this section, 'aggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"* * * * *

"(2) * * *

"* * * * *

"(d) Notwithstanding ORS 163.115 (1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in ORS 163.115 (1)(b)."

*See also* ORS 163.115(1)(b) (defining crime of felony murder).

and personally had killed Rickbeil in July 1991 during the course of a first-degree burglary. Rickbeil, a paraplegic suffering from cerebral palsy, had been stabbed to death in his apartment. During their investigation of Rickbeil's murder, the police discovered blood on a hallway wall and in the bathroom of Rickbeil's apartment, which they submitted to the Oregon State Police Forensic Laboratory (OSP laboratory) for analysis. The OSP laboratory determined that the blood had not come from Rickbeil and that it did not match any DNA profiles in the Oregon Convicted Offender Database. The police entered the DNA profile developed from that blood into the Oregon State Police database of DNA profiles for unsolved crimes. The police had no suspects for Rickbeil's murder, and the investigation stagnated.

On July 20, 1992, Ferguson and Rudiger were discovered stabbed to death in their home. Both Ferguson and Rudiger had their hands and feet bound together with electrical and telephone cords. Forensic tests conducted on the body of Ferguson suggested that she had been sexually assaulted, and the police took swabs from her body that tested positively for the presence of seminal fluid that did not belong to Rudiger. The police created a DNA profile from that seminal fluid and then entered that profile into the OSP unsolved crimes database.

On June 1, 1995, a man with a handgun forced his way into the apartment of Pliska. After sexually assaulting her, the intruder bound Pliska's hands and feet together with electrical and telephone cords, and attempted to smother her with a pillow. Pliska resisted and was able to make enough noise to cause her assailant to flee from her apartment. During their subsequent investigation of the attack on Pliska, the police took oral swabs from Pliska that tested positively for the presence of seminal fluid. The police created a DNA profile from that seminal fluid and then entered that profile into the OSP unsolved crimes database.

In February 1998, the police arrested defendant for the rape and attempted murder of Pliska. Pursuant to a search warrant, the police seized samples of defendant's blood, which they submitted to the OSP laboratory for analysis. The DNA analysis of defendant's blood matched the DNA

profiles of the semen samples that the police had recovered from both Pliska and Ferguson.

In February 2000, defendant pleaded guilty to two counts of aggravated murder for the deaths of Ferguson and Rudiger, and to one count of attempted aggravated murder for the attack on Pliska. The court sentenced defendant to two concurrent life sentences without the possibility of parole for the aggravated murder counts and to a 240-month consecutive sentence for the attempted aggravated murder count.[4] After his convictions, pursuant to ORS 137.076,[5] the state took a buccal sample from defendant, which it used to create a DNA profile for defendant that it entered into the Oregon Convicted Offender Database.

In March 2001, defendant was indicted for one count of aggravated murder for the death of Rickbeil after a database search reportedly matched the DNA profile of defendant to the DNA profile of the blood taken from the scene of the Rickbeil murder. The state informed the trial court that it planned to seek a death sentence if defendant was convicted of that aggravated murder charge.

Defendant's trial date first was set for May 28, 2002, and then reset to September 5, 2002. On July 3, 2002, defendant moved for a continuance, because the parties had not completed discovery and because defense counsel had needed to hire a new investigator. After defendant waived applicable speedy trial requirements,[6] the trial court granted defendant's motion and reset the trial date to August 18, 2003.

---

[4] Defendant did not appeal those convictions or seek post-conviction relief.

[5] As relevant here, ORS 137.076 requires a felon in the custody of the Department of Corrections to provide a blood or buccal sample to the Department of Corrections for transmission to the Oregon State Police. *See* ORS 137.076 (so providing).

[6] Both statutory and constitutional law mandate that the state provide a speedy trial to a defendant charged with a criminal offense. ORS 135.747 provides that the state must bring a criminal defendant to trial "within a reasonable period of time[.]" Article I, section 10, of the Oregon Constitution provides, in part, that "justice shall be administered * * * without delay[.]" The Sixth Amendment to the United States Constitution similarly provides, in part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" The Sixth Amendment right to a speedy trial is applicable to the states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Klopfer v. North Carolina*, 386 US 213, 87 S Ct 988, 18 L Ed 2d 1 (1967).

On March 19, 2003, defendant moved for another continuance after one of his lawyers learned that the lawyer's teenage son had been diagnosed with cancer. After defendant requested that the lawyer continue his representation and again waived speedy trial requirements, the trial court granted defendant's motion, setting the first omnibus hearing date to December 4, 2003, and resetting the trial date to April 5, 2004. The trial court subsequently reset defendant's trial date to April 23, 2004.

In December 2003 and February 2004, the trial court conducted several omnibus hearings to consider various pretrial motions that the parties had filed in the case. Although the state reported that it planned to introduce evidence of defendant's crimes against Ferguson, Rudiger, and Pliska if defendant's trial proceeded to a penalty phase, the state did not seek any pretrial ruling at those omnibus hearings as to whether evidence of defendant's other crimes also would be admissible during the guilt phase of defendant's aggravated murder trial.

On April 1, 2004, approximately three weeks before his trial was scheduled to begin, defendant filed another motion for a continuance. Also on April 1, 2004, the state filed a motion asking the trial court to conduct another omnibus hearing to determine the admissibility of certain photographs and writings by defendant. In addition to that motion, the state filed a notice of intent to offer evidence relating to defendant's crimes against Ferguson, Rudiger, and Pliska during the guilt phase, rather than just the penalty phase, of defendant's trial.

The trial court held a hearing on the parties' motions the next day. At that hearing, defendant argued for a continuance upon the ground that one of his lawyers was unable to assist with his defense because that lawyer was occupied with another aggravated murder penalty trial and was not certain that he would be finished by the start of defendant's trial. Defendant also argued that a continuance would permit plea negotiations to continue. The trial court denied defendant's motion, explaining that the court already had summoned thousands of jurors for defendant's scheduled trial

and that "the train has left the station." The trial court postponed argument on the state's motion after asking the state to prepare a more specific list of the evidence that it sought to introduce.

On April 15, 2004, approximately one week before defendant's trial was scheduled to begin, the trial court conducted another omnibus hearing to determine the admissibility of certain evidence that the state sought to introduce. At that hearing, among other things, the state sought a pretrial determination of the admissibility of evidence of the Rudiger and Ferguson murders and of the Pliska attempted murder during the guilt phase, in addition to the penalty phase, of defendant's trial. The state argued that it sought to present evidence of those other crimes to support its theory that defendant had responded to setbacks in his personal life by murdering people whom he did not know. Specifically, the state asserted that it sought to offer evidence that defendant had murdered Rudiger and Ferguson on the same day that he had been fired from a job and that defendant had attempted to murder Pliska shortly after he had confided to a coworker that a woman had "jilted" him. The state asserted that that evidence was relevant to show defendant's motive and intent in this case because the state also planned to introduce evidence that Rickbeil had been murdered on the same day that defendant had been fired from another job. In addition, the state contended that evidence of those other crimes was necessary for the state to establish that defendant had entered Rickbeil's apartment unlawfully because all witnesses who had seen Rickbeil on the day of his murder now were deceased.

For his part, among other things, defendant objected to the tardiness of the state's motion to introduce other crimes evidence during the guilt phase of his trial. Specifically, defendant contended that the timing of the state's motion undermined his preparedness for trial, pointing out that, because the state previously had taken the position that it would introduce other crimes evidence only during a penalty phase, defense counsel had investigated defendant's other crimes only to the extent that they would be relevant to penalty-phase issues.

After hearing both parties' arguments, the trial court ruled that it would allow the state to introduce evidence of the Rudiger and Ferguson murders during the guilt phase of defendant's trial for the noncharacter purposes of proving defendant's motive and intent and proving the unlawfulness of defendant's entry into Rickbeil's apartment. The trial court limited that ruling, however, by providing that the state could not prove those murders through the testimony of the fathers of Rudiger and Ferguson, who had discovered their children's bodies after the murders. In addition, the trial court ruled that it would not permit the state to introduce evidence of the Pliska attempted murder upon relevance grounds[7] and because "the fact that Ms. Pliska herself would be here to testify to this makes it more inflammatory and distracting."

The state did not object to the trial court's limitation on the manner that it could prove the Rudiger and Ferguson murders. The state, however, filed a written motion asking the trial court to reconsider its evidentiary ruling respecting the Pliska attempted murder.

The trial court held a hearing on the state's reconsideration motion on April 21, 2004, two days before defendant's scheduled trial. At that hearing, the state argued that evidence of the Pliska attempted murder was crucial for the state to prove that defendant had entered Rickbeil's apartment unlawfully and with the intent to kill. Specifically, the state urged that evidence of defendant's attempted murder of Pliska was the most probative evidence of defendant's intent in this case because Pliska was the "only living witness who can testify that the defendant unlawfully entered her residence, a residence with the intent to commit murder." To reduce the risk of prejudice from Pliska's testimony, the state offered to limit Pliska's testimony by excluding any mention of defendant's sexual crimes against her.

---

[7] The trial court appeared to question the relevance of evidence of the Pliska attempted murder to the murder at issue in this case because of dissimilarities between those crimes, including: (1) defendant had not been fired from a job on the day of the attack on Pliska; (2) the attack on Pliska had involved "solely a female victim" and had been "a sexual crime"; and (3) the weapon used in the Pliska attack had been a gun, rather than a knife.

After hearing arguments on the state's motion, the trial court ruled that, in addition to evidence relating to the Ferguson and Rudiger murders, the state also could introduce evidence relating to defendant's attempted murder of Pliska during the guilt phase of defendant's trial. The trial court further ruled, however, that the state could not prove that crime by introducing testimony from Pliska herself because Pliska's personal testimony would be unfairly prejudicial under OEC 403. In making that second ruling, the court explained:

"* * * I think [that the evidence of defendant's attempted murder of Pliska] is in the same category as the Rudiger and Ferguson evidence with the exception that you want to put the victim on live. And that, I think, has the high potential of being an incendiary moment in the trial, and it's just going to be totally distracting. So, if you can do this without bringing her, and put on the same kind of evidence as to the crime in her house that you're putting on with Rudiger and Ferguson, I think my ruling would be the same. * * * I'm really concerned about that personal appearance in front of a jury. That's my only concern."

After a recess, the state informed the trial court that it had contemplated alternative means to prove defendant's attempted murder of Pliska, but that it had concluded that Pliska's personal testimony was "essential" to its case. The state then moved for a continuance to appeal the trial court's OEC 403 ruling to this court. The trial court denied that motion, stating:

"Well, in my view, this is not a pretrial ruling suppressing evidence. This is a motion *in limine* on the admissibility of evidence. It is not appealable. You may try to mandamus it, I suppose. * * * I've made it very clear that I'm not suppressing evidence. I have simply made an evidentiary decision as to the manner in which you may prove what you want to prove. I had agreed with you that you're entitled under 404 to prove what you want to prove. I have simply restricted the manner in which you want to do that because of the danger of unfair prejudice and inflaming the jury."

The state responded to the trial court's denial of its motion for a continuance by stating that, unless it was able to

introduce Pliska's testimony during the guilt phase of defendant's trial, then it was "unable to proceed" with the prosecution. Defendant responded by moving to dismiss the indictment, and the trial court ruled that it would dismiss the indictment without prejudice. In doing so, the trial court explained:

> "[The court:] I'm not dismissing with prejudice. I'm saying if I dismiss without prejudice[,] you are still free to re-file as a matter of procedure, are you not?

> "[The state:] We—the State feels that it is, but we also feel that we are entitled to appeal the Court's order dismissing it.

> "[The court:] And you well may be. Well, I'm going to dismiss the indictment for the reason the State is not ready after however many years this has been since the indictment. You've raised these 404 issues very late in the game, long after the jury was summoned even. I believe. Is that right?

> "[The state:] I'm not sure when the jury was summoned, Your Honor.

> "[The court:] Well, approximately five weeks ago. These things have been raised since that time. They are in the nature of motions *in limine* as to the admissibility of evidence. And as such, they are within the discretion of the Court to rule on without interference of appellate courts.

> "Since [defendant] is in custody forever and ever, you don't risk a [speedy trial] problem, if you take a frivolous appeal, as I think it is, but it seems very ill advised from the standpoint of orderly procedure of both your office and the process of the Court. And obviously I cannot force you to trial, as far as I know. So I will take the other alternative and grant the defense motion to dismiss the indictment. And we are done."

A week later, on April 28, 2004, defendant filed a motion for a dismissal with prejudice and a judgment of acquittal under ORS 136.130. In that motion, defendant argued that dismissal with prejudice was proper because the prosecutor's refusal to proceed constituted "inexcusable neglect" of the prosecution, noting specifically that the state

had known of defendant's other crimes long before the indictment in this case even had been filed. Defendant also contended that the state's delay of his trial would prejudice his defense because three of his penalty-phase witnesses—namely, his aunt and stepmother, who both had raised him, and his sixth-grade teacher, who still communicated with him—were either elderly or very ill. Finally, because he already was serving two "true-life" sentences for his other crimes, defendant asserted that granting him a judgment of acquittal would not frustrate the protection of the public.

The trial court held a hearing on defendant's motion for a dismissal with prejudice and judgment of acquittal the next day. At the outset of that hearing, the trial court offered to postpone arguments to allow the state the opportunity to file a written response to defendant's motion for a dismissal with prejudice. The state declined the trial court's offer to delay the hearing and also declined to file any written response to defendant's motion.

At the hearing on defendant's motion, the state argued that the trial court lacked discretion to dismiss the indictment with prejudice because defendant had failed to show that the state had neglected the prosecution or that delaying trial would prejudice his defense. The state pointed out that it had no duty to provide pretrial notice of its intent to offer other crimes evidence and that it previously had provided defendant with discovery of all evidence relating to the Rudiger and Ferguson murders and the Pliska attempted murder. In response to the trial court's questions about why the state had not filed a notice of intent to introduce other crimes evidence during the guilt phase "a year ago or six months ago," the prosecutor explained that, although the witnesses had died some time ago, the prosecutor had learned only four months earlier, in December 2003, that the witnesses who had seen Rickbeil on the day of his murder now were deceased. The prosecutor also noted that, although the indictment against defendant had been filed three years earlier, he had been assigned to the case only "about a year, year and a half."

The trial court subsequently dismissed the indictment under ORS 136.120[8] and entered an order of dismissal with prejudice and a judgment of acquittal pursuant to ORS 136.130.[9] In its written "Opinion and Order Dismissing Indictment," the trial court explained its decision by stating:

"Because of the state's inexcusable neglect in its handling of this prosecution * * * culminating in its claim of 'unable to proceed' less than 48 hours prior to the time of trial that had been scheduled for more than a year; because of the prejudice to this defendant of the difficulty of calling at some indefinite time in the future elderly or seriously ill witnesses who may not be alive at the time of a trial at some future indefinite date; because of the prejudice to the defendant, and thus to the people of the State of Oregon, who are paying for his defense, in re-scheduling defendant's expert witnesses, at more time and expense; because of the unnecessary expense borne by the people of the State of Oregon in calling 2500 of what turned out to be unnecessary jurors; because even a defendant already incarcerated on two true-life sentences is prejudiced by the stress of being charged in a death-penalty case that the state has declined to negotiate, and thus his right to a speedy trial is impinged by the state's neglect and the lengthy delay that the state invites by its April 21 claim of 'unable to proceed'; because in this case the public interest is adequately protected *because*

---

[8] ORS 136.120 provides:

"If, when the case is called for trial, the defendant appears for trial and the district attorney is not ready and does not show any sufficient cause for postponing the trial, the court shall order the accusatory instrument to be dismissed, unless, being of the opinion that the public interests require the accusatory instrument to be retained for trial, the court directs it to be retained."

We note that, although a trial court's authority to dismiss an accusatory instrument under ORS 136.120 arises only "when the case is called for trial," the dismissal in this case was not premature, because the state had informed the trial court that it would not proceed with the prosecution. *See Daugharty v. Gladden*, 217 Or 567, 578, 341 P2d 1069 (1959) ("[T]he law will not require the doing of a useless act.").

[9] ORS 136.130 provides:

"If the court orders the accusatory instrument to be dismissed and the instrument charges a felony or Class A misdemeanor, the order is not a bar to another action for the same crime unless the court so directs. If the court does so direct, judgment of acquittal shall be entered. If the accusatory instrument charges an offense other than a felony or Class A misdemeanor, the order of dismissal shall be a bar to another action for the same offense."

defendant is already incarcerated on two true-life sentences, plus a consecutive 240-month sentence; and because 'rehabilitation' of this offender is not an issue—IT IS HEREBY ORDERED, pursuant to ORS 136.120 and *State v. Cheshier*, 41 Or App 141, 597 P2d 839 (1979), that because 'the defendant appear[ed] for trial and the district attorney [was] not ready and [did] not show any sufficient cause for postponing the trial,' the accusatory instrument is hereby dismissed."

(Emphasis in original.)

As noted above, the state filed this direct appeal to this court under ORS 138.060(2)(a) and (b), challenging both the trial court's dismissal of the indictment with prejudice and the trial court's OEC 403 ruling excluding the testimony of Pliska. Defendant argues that neither of those trial court orders are appealable and, on cross-appeal, raises 15 assignments of error relating to other pretrial rulings that the trial court made. We address both the parties' arguments below.

## II.   STATE'S APPEAL

### A.   *Appellate Jurisdiction*

■ ■     A threshold question in this case is whether this court has subject matter jurisdiction to decide the state's appeal.[10] With the exception of certain instances of original jurisdiction provided in Article VII (Amended), section 2, of the Oregon Constitution,[11] this court's jurisdiction to hear and decide an appeal derives from statute. *McCarger v. Moore*, 89 Or 597, 599, 175 P 77 (1918). Because this court lacks judicial power to resolve any substantive issues in the absence of appellate jurisdiction, we have an independent duty to determine whether an appeal is statutorily authorized, and parties to an appeal may not confer jurisdiction by either waiver or agreement. *McEwen et ux v. McEwen et al*, 203 Or 460, 470, 280 P2d 402 (1955).

---

[10] On May 27, 2004, defendant filed a "Motion for Summary Determination of Appellate Jurisdiction" with this court pursuant to ORS 19.235 and ORAP 2.35. This court denied that motion on July 27, 2004, with leave for defendant to renew that motion in his brief on the merits.

[11] Article VII (Amended), section 2, provides, in part, that "the supreme court may, in its own discretion, take original jurisdiction in mandamus, quo warranto and habeas corpus proceedings."

■ ORS 138.060 governs the state's right to appeal in criminal actions. *See State ex rel Carlile v. Frost*, 326 Or 607, 612, 956 P2d 202 (1998) ("ORS 138.020 limits appeals by the state in criminal cases to those allowed by ORS 138.060."). The question whether ORS 138.060 authorizes the present appeal is one of statutory interpretation, requiring us to discern the intent of the legislature. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (court's task in interpreting statutes is to discern legislature's intent). To do so, we first examine the text and context of the statute, including this court's prior interpretations of the same statute or earlier versions of that statute. *State v. Toevs*, 327 Or 525, 532, 964 P2d 1007 (1998).

■ ORS 138.060 provides, in part:

"(1) The state may take an appeal from the circuit court to the Court of Appeals from:

"(a) An order made prior to trial dismissing or setting aside the accusatory instrument;

"* * * * *

"(c) An order made prior to trial suppressing evidence;

"* * * * *

"(i) An order dismissing an accusatory instrument under ORS 136.130.

"(2) Notwithstanding subsection (1) of this section, when the state chooses to appeal from an order listed in paragraph (a) or (b) of this subsection, the state shall take the appeal from the circuit court to the Supreme Court if the defendant is charged with murder or aggravated murder. The orders to which this subsection applies are:

"(a) An order made prior to trial suppressing evidence; and

"(b) An order made prior to trial dismissing or setting aside the accusatory instrument."

As noted previously, the state filed this direct appeal to this court pursuant to ORS 138.060(2)(a) and (b), challenging both the trial court's dismissal order and its OEC 403 ruling concerning the testimony of Pliska. In deciding whether we have jurisdiction over this appeal, however, our initial

inquiry focuses upon only the state's right to appeal from the trial court's dismissal order—that is, whether the state's right to appeal from "[a]n order made prior to trial dismissing or setting aside the accusatory instrument" under ORS 138.060(2)(b) encompasses the right to appeal from a pretrial order dismissing the indictment with prejudice and entering a judgment of acquittal under ORS 136.130. Our jurisdiction to proceed depends upon the answer to that question because, unless we have power to reverse the trial court's dismissal of the indictment and determine that we in fact should do so, then any decision that we would make concerning the correctness of the trial court's OEC 403 ruling would have no practical effect upon the rights of the parties and would constitute an advisory opinion. *See Yancy v. Shatzer*, 337 Or 345, 362-63, 97 P3d 1161 (2004) (Oregon state courts lack authority to render advisory opinions). We turn, then, to our consideration of the scope of the state's right to appeal under ORS 138.060(2)(b).[12]

Although a version of ORS 138.060 has been in effect since the Deady Code of 1864, *see* General Laws of Oregon, Criminal Code, chapter XXIII, section 227, page 480 (Deady 1845-1864), the legislature has made a number of significant amendments to that statute since that time. First, as discussed in more detail below, the legislature gradually has broadened the state's right to appeal in criminal actions by expanding the types of trial court orders that are appealable under ORS 138.060. After creating the Court of Appeals in 1969, the legislature also initially transferred exclusive statutory jurisdiction over all state appeals under ORS 138.060 from this court to the Court of Appeals. Or Laws 1969, ch 198, § 64. In 2001, however, the legislature again amended ORS 138.060 to return exclusive statutory jurisdiction to this

---

[12] We note that both defendant and the state appear to presume that, if ORS 138.060(1) authorizes a state appeal to the Court of Appeals from a dismissal with prejudice resulting in a judgment of acquittal under ORS 136.130, then the present appeal properly is before this court by operation of ORS 138.060(2)(b). The parties' failure to address ORS 138.060(2)(b) does not prevent this court from doing so, however, because we have an independent duty to confirm the existence of our jurisdiction, as well as a duty to discern the legislature's intent when interpreting a statute. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties.").

court in state appeals from certain pretrial orders in murder or aggravated murder prosecutions. Or Laws 2001, ch 870, § 4. One of the state appeals over which this court has exclusive statutory jurisdiction in murder and aggravated murder prosecutions is an appeal from "[a]n order made prior to trial dismissing or setting aside the accusatory instrument" under ORS 138.060(2)(b).

Looking only at the text of ORS 138.060(2)(b), a pretrial order dismissing an indictment with prejudice under ORS 136.130 appears to be a type of pretrial order "dismissing * * * the accusatory instrument" within the meaning of ORS 138.060(2)(b). As described more fully in our discussion on the merits, ORS 136.120 authorizes a trial court to dismiss an indictment when "the defendant appears for trial and the district attorney is not ready and does not show any sufficient cause for postponing the trial[.]" ORS 136.130, in turn, prescribes the effect of a pretrial dismissal under ORS 136.120 depending upon the type of offense at issue. In cases where the charged offense is a felony or Class A misdemeanor, ORS 136.130 provides that such a dismissal does not bar another prosecution for the same offense unless the trial court "so directs." If the trial court orders the dismissal with prejudice, however, then ORS 136.130 requires the trial court to effectuate that order by entering a judgment of acquittal.

Although a pretrial order dismissing the indictment with prejudice under ORS 136.130 appears to fall within the textual scope of ORS 138.060(2)(b), our examination of the context of that provision initially points us to a contrary reading. That is so because, in contrast to subsection (2) of ORS 138.060, which governs this court's exclusive statutory jurisdiction over state appeals in criminal actions, subsection (1) of ORS 138.060, which governs the Court of Appeals' jurisdiction, lists *two* types of pretrial orders dismissing the indictment that the state may appeal to the Court of Appeals. *See PGE*, 317 Or at 611 (context includes other provisions of same statute). The first of those provisions—now codified at ORS 138.060(1)(a)—contains statutory wording identical to ORS 138.060(2)(b) and authorizes a state appeal to the Court of Appeals from "[a]n order made prior to trial dismissing or setting aside the accusatory instrument."

In *State v. Carrillo*, 311 Or 61, 804 P2d 1161 (1991), this court construed the statutory provision now codified at ORS 138.060(1)(a). In that case, focusing upon the absence of any reference to a "judgment of acquittal," this court determined that ORS 138.060 (1991) did not authorize a state appeal from a dismissal with prejudice resulting in judgment of acquittal under ORS 136.130. In reaching that conclusion, this court opined that "the legislature made a conscious policy decision not to allow the state an appeal when a trial court orders the accusatory instrument to be dismissed for the reasons stated in ORS 136.120, directs that the order is a bar to another action for the same crime, and signs a 'judgment of acquittal' pursuant to ORS 136.130." *Id.* at 67.

Subsequently to this court's decision in *Carrillo*, the legislature amended ORS 138.060 to add a provision—now codified at ORS 138.060(1)(i)—that authorizes a state appeal to the Court of Appeals from "[a]n order dismissing an accusatory instrument under ORS 136.130." Or Laws 1999, ch 946, § 2. Defendant correctly points out that, similarly to ORS 138.060(1)(a), ORS 138.060(1)(i) contains no explicit reference to a "judgment of acquittal" under ORS 136.130. Nevertheless, in view of its unqualified reference to orders of dismissal under ORS 136.130, the text of ORS 138.060(1)(i) makes clear that the state may appeal to the Court of Appeals from an order of dismissal with prejudice under ORS 136.130. Because ORS 136.130 directs that a judgment of acquittal must accompany any such order, we conclude that the state's right to appeal from an order of dismissal with prejudice under ORS 136.130 necessarily encompasses the right to appeal from a judgment of acquittal entered pursuant to that order. The question remains, however, whether ORS 138.060(2)(b) authorizes such appeals to this court in murder and aggravated murder prosecutions.

■ ■ In construing statutes, we generally presume that the legislature intended the same term in the same statute to have the same meaning throughout that statute. *Penland v. Redwood Sanitary Sewer Service Dist.*, 327 Or 1, 7, 956 P2d 964 (1998). We also generally presume that "use of a term in one section and not in another section of the same statute indicates a purposeful omission[.]" *PGE*, 317 Or at 611. If we

were to apply only those rules of textual construction to ORS 138.060(2)(b), then it would appear to follow that, by using the same statutory wording in subsection (2) of ORS 138.060 that this court had construed in *Carrillo*, the legislature directed this court to have exclusive statutory jurisdiction over state appeals from *all* pretrial orders dismissing the indictment in murder and aggravated murder prosecutions *except* those orders where the trial court had dismissed the indictment with prejudice and entered a judgment of acquittal pursuant to ORS 136.130. As explained below, however, other aspects of the context of ORS 138.060(2)(b) cause us to question whether those rules of textual construction should control our interpretation here.

In examining ORS 138.060 as a whole, we view as significant the types of state appeals that the legislature selected for this court's exclusive statutory jurisdiction in murder and aggravated murder prosecutions. By contrast to other types of orders that the state may appeal to the Court of Appeals under ORS 138.060(1),[13] the state appeals over which this court has exclusive statutory jurisdiction in murder and aggravated murder prosecutions—that is, state appeals from pretrial orders suppressing evidence and state appeals from pretrial orders dismissing the indictment—are both types of state appeals that uniquely may implicate speedy trial requirements. That is so because, if the state prevails in an appeal from a pretrial order in a criminal prosecution, then the state must reinitiate the prosecution, and the pretrial delay stemming from the state's appeal may give rise to a speedy trial violation. *See State v. Harberts*, 331 Or 72, 90, 11 P3d 641 (2000) (observing that "[t]he state always must exercise its statutory right to appeal in a manner that is

---

[13] Along with the pretrial orders set out previously, 338 Or at 600, ORS 138.060(1) authorizes state appeals to the Court of Appeals from certain post-verdict orders or judgments, including: (1) an order arresting the judgment, ORS 138.060(1)(b); (2) a judgment of conviction based on the sentence as provided in ORS 138.222, ORS 138.060(1)(e); (3) an order made after a guilty finding dismissing or setting aside the accusatory instrument, ORS 138.060(1)(g); and (4) an order granting a new trial, ORS 138.060(1)(h). In addition, ORS 138.060 authorizes state appeals from "[a]n order made prior to trial for the return or restoration of things seized[,]" ORS 138.060(1)(d); and "[a]n order in a probation revocation hearing finding that a defendant who was sentenced to probation under ORS 137.712 has not violated a condition of probation by committing a new crime[,]" ORS 138.060(1)(f).

consistent with its constitutional obligation" under Article I, section 10, of Oregon Constitution to bring accused to trial "without delay"). By contrast, state appeals from post-verdict orders or judgments do not implicate speedy trial requirements, because those appeals proceed after the state has obtained a conviction and, if the state prevails in those appeals, then the state is entitled to reinstatement of the verdict. *See State v. McKenzie*, 307 Or 554, 558, 771 P2d 264 (1989) (noting that successful state appeal from motion for new trial or motion for arrest of judgment restores earlier conviction). Thus, by selecting only pretrial state appeals for this court's exclusive statutory jurisdiction in murder and aggravated murder prosecutions, the legislature appears to have intended to minimize the risk of speedy trial violations in cases involving those serious criminal charges. Because the risk of speedy trial violations is equally great in state appeals from orders dismissing the indictment without prejudice and orders dismissing the indictment with prejudice, that context strongly suggests to us that the legislature intended this court to have exclusive statutory jurisdiction over both types of dismissals in those prosecutions.

Because the legislature's intent is unclear when the text of ORS 138.060(2)(b) is viewed in the above-described context, we turn to the legislative history of ORS 138.060(2)(b) for further guidance. *See PGE*, 317 Or at 611-12 (court considers legislative history of statute if legislature's intent is not clear from text and context). That history reveals that the 2001 Legislative Assembly enacted subsection (2) to ORS 138.060, giving this court exclusive statutory jurisdiction over state appeals from pretrial orders suppressing evidence or dismissing the indictment in murder and aggravated murder prosecutions, in response to this court's decision in *Harberts*, 331 Or at 72. Tape Recording, House Floor Proceeding, HB 2918, July 5, 2001, Tape 240, Side A (statement of Rep Max Williams). In *Harberts*, this court vacated a criminal defendant's conviction and sentence of death for aggravated murder after concluding that the state had violated the state constitutional speedy trial requirements as the result of delay from state appeals of pretrial suppression orders. In explaining the purpose of the bill that became ORS 138.060(2), Senator Kate Brown stated during

Senate floor proceedings that the bill served to prevent speedy trial violations. Tape Recording, Senate Floor Proceeding, HB 2918, July 5, 2001, Tape 278, Side A (statement of Senator Kate Brown). Because, as noted above, state appeals from all forms of pretrial dismissals carry the same risk of speedy trial violations, that history convinces us that the legislature intended this court to have exclusive statutory jurisdiction over state appeals from all pretrial orders dismissing an indictment in murder and aggravated murder prosecutions, including pretrial orders dismissing an indictment with prejudice and entering a judgment of acquittal pursuant to ORS 136.130.

In sum, after examining the text, context, and legislative history of ORS 138.060(2)(b), we conclude that the state's right to appeal from "[a]n order made prior to trial dismissing or setting aside the accusatory instrument" under ORS 138.060(2)(b) encompasses the right to appeal from a pretrial order dismissing the indictment with prejudice and entering a judgment of acquittal under ORS 136.130. Having so concluded, we now turn to the merits of the state's appeal.[14]

B. *Trial Court's Dismissal of the Indictment under ORS 136.120 and Dismissal with Prejudice and Entry of Judgment of Acquittal under ORS 136.130*

■        As noted previously, 338 Or at 600-01, any ultimate ruling on our part respecting the correctness of the trial court's OEC 403 ruling would have no practical effect upon the parties if the trial court's dismissal of the indictment was proper. Thus, in addressing the merits of the state's appeal, we begin our analysis by considering whether the trial court

---

[14] Defendant also argues that this court should not reach the merits of the state's appeal because, according to defendant, the state "invited" the trial court's dismissal of the indictment. To the extent that defendant is invoking the principle that invited error cannot serve as the basis for reversal, *see, e.g., Clay / Luttrell v. Pay Less Drug Stores*, 276 Or 673, 677, 556 P2d 125 (1976) (so stating), we reject defendant's argument. The state did not advise the trial court to dismiss the indictment and, indeed, specifically stressed to the trial court that the state was not moving to dismiss the indictment by refusing to proceed with the prosecution. *Cf. State v. Koennecke*, 274 Or 169, 173-74, 545 P2d 127 (1976) (although order excluding testimony of two state witnesses was appealable order under ORS 138.060, state had invited challenged error by advising trial court to enter order).

erred by dismissing the indictment against defendant with prejudice in response to the state's refusal to proceed with the prosecution. Before turning to the parties' arguments concerning that question, we first describe the relevant statutory framework.

ORS 136.120 governs the propriety of the trial court's dismissal of the indictment in this case. That statute provides:

> "If, when the case is called for trial, the defendant appears for trial and the *district attorney is not ready and does not show any sufficient cause for postponing the trial,* the court shall order the accusatory instrument to be dismissed, unless, being of the opinion that the public interests require the accusatory instrument to be retained for trial, the court directs it to be retained."

(Emphasis added.) When a trial court dismisses an accusatory instrument pursuant to ORS 136.120, ORS 136.130 prescribes the effect of that dismissal. That statute provides:

> "If the court orders the accusatory instrument to be dismissed and the instrument charges a felony or Class A misdemeanor, the order is not a bar to another action for the same crime *unless the court so directs. If the court does so direct, judgment of acquittal shall be entered.* If the accusatory instrument charges an offense other than a felony or Class A misdemeanor, the order of dismissal shall be a bar to another action for the same offense."

(Emphasis added.)

ORS 136.120 is one of the statutory mechanisms that the legislature has adopted to effectuate the speedy trial requirement under Article I, section 10, of the Oregon Constitution. *See State v. Clark,* 86 Or 464, 468, 168 P 944 (1917) (so stating); *see also* ORS 135.745 (authorizing trial court to dismiss prosecution if accusatory instrument not filed within 30 days unless good cause shown); ORS 135.747 (authorizing trial court to dismiss accusatory instrument if defendant not brought to trial within reasonable period of time). That statute authorizes a trial court to dismiss an accusatory instrument in a criminal prosecution only if the prosecutor is not ready for trial and is unable to show "any sufficient cause" for postponing the defendant's trial. Thus, when a prosecutor is

not ready for trial, and the defendant moves for dismissal, then ORS 136.120 first requires the trial court to determine whether the prosecutor has shown "any sufficient cause" for postponing the defendant's trial.

■ By its terms, the initial inquiry under ORS 136.120—whether the prosecutor has shown "any sufficient cause" for postponing a defendant's trial—examines whether the prosecutor has shown reasons that objectively justify the postponement of the trial. As a result of that focus, whether or not delaying trial will prejudice the defendant is not part of the trial court's initial determination as to whether it has authority under ORS 136.120 to dismiss the indictment. *Cf. State v. Emery*, 318 Or 460, 465-66, 869 P2d 859 (1994) (rejecting notion that ORS 135.747 requires showing of prejudice to defendant for trial court to dismiss accusatory instrument when defendant is not brought to trial "within a reasonable period of time"). Because the determination whether the prosecutor has shown "any sufficient cause" for postponement involves a determination that is capable of only one legally correct outcome, we review that determination for errors of law.

■ If the trial court determines that the prosecutor has failed to show "any sufficient cause" for postponing trial, then the next step under ORS 136.120 is to determine whether dismissal is proper. Although ORS 136.120 provides that the trial court "shall" dismiss the indictment in such circumstances, that statute does not require the trial court to do so if the trial court is "of the opinion that the public interests require the accusatory instrument to be retained for trial[.]" Because ORS 136.120 delegates to the trial court's "opinion" the determination whether "the public interests require the accusatory instrument to be retained," we review a trial court's ultimate decision whether to dismiss an indictment under ORS 136.120 for abuse of discretion. *See State v. Rogers*, 330 Or 282, 310-12, 4 P3d 1261 (2000) (appellate court reviews for abuse of discretion when application of legal rule capable of more than one legally correct outcome).

■ As noted above, if the trial court has authority to dismiss the accusatory instrument under ORS 136.120, and the trial court elects to do so, then ORS 136.130 prescribes the

effect of that dismissal. In cases where the accusatory instrument charges an offense other than a felony or Class A misdemeanor, ORS 136.130 provides that a dismissal under ORS 136.120 operates to bar another prosecution for the same offense. By contrast, in cases where the charged offense is a felony or Class A misdemeanor, ORS 136.130 provides that a dismissal under ORS 136.120 does not operate to bar another prosecution unless the trial court "so directs." Because ORS 136.130 confers the trial court with authority to direct a dismissal with prejudice, but provides no criteria for its exercise, it follows that the trial court's decision to dismiss with prejudice under ORS 136.130 is a discretionary one. Consequently, we also review that decision for abuse of discretion.

With that background in mind, we now return to the trial court's dismissal of the indictment in this case. The state contends that the trial court exceeded its authority under ORS 136.120 in dismissing the indictment against defendant because the state's intent to appeal from the trial court's OEC 403 ruling concerning Pliska's testimony constituted "any sufficient cause" for postponing defendant's trial. If that contention is wrong—that is, if the trial court possessed authority to dismiss the indictment under ORS 136.120 and did not abuse its discretion in doing so—then the state next argues that the trial court abused its discretion under ORS 136.130 by dismissing the indictment with prejudice and entering a judgment of acquittal. For the reasons explained below, we agree with the state's first argument and, consequently, do not reach its second one.

In *State v. Caruso*, 289 Or 315, 613 P2d 752 (1980), this court considered the propriety of a trial court's dismissal of an accusatory instrument after the state refused to proceed with the prosecution because it wished to appeal a trial court's denial of its request for a pretrial omnibus hearing under ORS 135.037.[15] In considering that question, this court

---

[15] ORS 135.037 provides, in part:

"(1) At any time after the filing of the accusatory instrument in circuit court and before the commencement of trial thereon, *the court upon motion of any party shall*, and upon its own motion may, *order an omnibus hearing.*"

(Emphasis added.)

first determined that ORS 138.060 did not authorize the state to appeal from a trial court order denying a pretrial omnibus hearing. *Id.* at 321. After making that determination, this court went on to conclude that the trial court's dismissal of the accusatory instrument was proper there because, in light of the state's refusal to proceed, the trial court had "scant alternative to dismissal." *Id.* at 322. In reaching that conclusion, however, this court took care to stress that the state's refusal to proceed in the face of a nonappealable ruling "is to be distinguished from cases where appealable orders are followed by dismissal." *Id.* at 322 n 6 (citing *State v. Hoare*, 20 Or App 439, 532 P2d 240 (1975), and *State v. Knudsen*, 41 Or App 123, 597 P2d 834 (1979)).

In the present case, the trial court was of the view that, as was true in *Caruso*, the state did not have the right to obtain appellate review of the trial court's OEC 403 ruling excluding Pliska's testimony. On the basis of that conclusion, the trial court determined that it had authority to dismiss the indictment against defendant because the state had failed to show "any sufficient cause" for postponing defendant's trial under ORS 136.120. As explained below, however, that predicate determination concerning the appealability of the trial court's OEC 403 ruling was erroneous. Because the state had the right to appeal that ruling, the trial court did not have authority under ORS 136.120 to dismiss the indictment against defendant.

As set out previously, 338 Or at 600, ORS 138.060(2)(a) authorizes a state appeal from "[a]n order made prior to trial suppressing evidence." In *State v. Koennecke*, 274 Or 169, 545 P2d 127 (1976), this court considered the scope of the state's right to appeal under that statutory wording. In that case, the state had sought to appeal from a pretrial order excluding the testimony of two police officers based upon those officers' refusal to comply with a trial court order to produce certain evidence to the defense. In deciding that the state had statutory authority to appeal that ruling, this court concluded that the state's right to appeal from a pretrial order "suppressing evidence" under ORS 138.060 extended to any pretrial order excluding evidence. *Id.* at 172-73. Applying that holding in *Koennecke* to the circumstances at issue here, it is clear that the trial court's OEC 403 order

excluding Pliska's testimony was a pretrial order "suppressing evidence" within the meaning of ORS 138.060(2)(a). Under ORS 138.020, the state may appeal from such an order as "a matter of right[.]" The trial court erred in concluding otherwise.

We recognize, as the trial court did, that the state's decision to appeal from a pretrial ruling is one that may add significant delay to the time before which a defendant is brought to trial. We also recognize, as the trial court did, that the state's delay of defendant's criminal trial in this case may carry the risk of prejudice to the defense. Nevertheless, the state apparently determined, even if it did so belatedly, that Pliska's testimony was sufficiently important to its case to warrant the delay and interruption that attends a pretrial appeal from an exclusionary ruling. Because the state alone must make that prosecutorial judgment, we conclude that, notwithstanding the state's tardiness in seeking the trial court's ruling, the state's intent to appeal from the trial court's OEC 403 order excluding Pliska's testimony necessarily constituted "any sufficient cause" under ORS 136.120 for postponing defendant's trial. Consequently, we conclude that the trial court exceeded its authority under ORS 136.120 in dismissing the indictment against defendant.

C. *Trial Court's Exclusion of Pliska's Testimony under OEC 403*

■■ Having concluded that the trial court exceeded its authority under ORS 136.120 in dismissing the indictment against defendant, we next consider whether the trial court erred by excluding the testimony of Pliska during the guilt phase of defendant's trial pursuant to OEC 403. As noted previously, the trial court determined that, with the exception of her personal testimony, evidence of defendant's attempted murder of Pliska was admissible under OEC 404(3), set out at 338 Or at 588 n 2. This court previously has explained the test for determining the admissibility of other crimes evidence under OEC 404(3):

"A three-part test governs the admissibility of 'other crimes' evidence under OEC 404(3): (1) The evidence must be independently relevant for a noncharacter purpose [such

as intent or motive]; (2) the proponent of the evidence must offer sufficient proof that the uncharged misconduct was committed and that defendant committed it; and (3) the probative value of the uncharged misconduct evidence must not be substantially outweighed by the dangers or considerations set forth in OEC 403. Each of these requirements must be satisfied before uncharged misconduct evidence is admissible under OEC 404(3)."

*State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992) (footnotes omitted); *see also State v. Cox*, 337 Or 477, 483-84, 98 P3d 1103 (2004) (applying same test).

In this case, the trial court determined that the state had satisfied the first two parts of the above-described test under OEC 404(3), that is, the state had shown that evidence of defendant's attempted murder of Pliska was relevant for a noncharacter purpose[16] and had offered sufficient proof that defendant had committed that crime. In considering the third part of the test, however, the trial court held that, although the state could prove defendant's attempted murder of Pliska in a different way, Pliska's personal testimony was inadmissible during the guilt phase of defendant's trial under OEC 403.

In challenging the trial court's ruling, the state first appears to contend that the trial court erred by applying OEC 403 at all in deciding the admissibility of Pliska's testimony during the guilt phase of defendant's trial. Specifically, the state points out that, in criminal cases, OEC 404(4)[17] now

---

[16] In one of his assignments of error on cross-appeal, defendant argues that the trial court erred in concluding that evidence of defendant's crimes against Pliska, Ferguson, and Rudiger was relevant to any issue in the guilt phase of defendant's trial. OEC 401 provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We reject defendant's argument that the trial court erred in concluding that evidence of defendant's other crimes was relevant, because we agree with the trial court that that evidence had a tendency to prove defendant's motive and intent.

[17] OEC 404(4) provides, in part:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) ORS 40.180, 40.185, 40.190, 40.195, 40.200,40.205, 40.210 and, *to the extent required by the United States Constitution or the Oregon Constitution, ORS 40.160*[.]"

(Emphasis added.) ORS 40.160 adopts OEC 403.

authorizes a trial court to exclude relevant evidence of a defendant's other crimes under OEC 403 only "to the extent required by the United States Constitution or the Oregon Constitution[.]" According to the state, no state or federal constitutional provision "required the trial court to conduct [OEC 403] balancing[,] * * * let alone conclude that such balancing should result in excluding [Pliska's] testimony[.]"

Defendant responds that, regardless of the merits of the state's argument in that regard, OEC 404(4) may not be applied to his criminal trial because such an application would violate the prohibition against *ex post facto* laws contained in Article I, section 21, of the Oregon Constitution.[18] We agree with defendant and, consequently, conclude that the trial court did not err by applying OEC 403 to decide the admissibility of Pliska's testimony in the guilt phase of defendant's trial.

In *State v. Fugate*, 332 Or 195, 213, 26 P3d 802 (2001), this court explained that the *ex post facto* clause in Article I, section 21, prohibits the application of "laws that alter the rules of evidence in a one-sided way that makes conviction of the defendant more likely" than the conviction would have been at the time when the defendant allegedly committed the charged offense. To the extent that it purports to limit the trial court's authority under OEC 403 to exclude relevant, but prejudicial, evidence of a defendant's other crimes to only those circumstances when exclusion is constitutionally required, OEC 404(4) clearly qualifies as an evidentiary change in the law that favors only the prosecution by making the conviction of a defendant more likely. *See* Laird C. Kirkpatrick, *Oregon Evidence* § 404.07(1), Art IV-95 (4th ed 2002) (opining that "courts wishing to avoid potentially unconstitutional application of OEC 404(4) should apply full OEC 403 balancing to [prior bad acts] evidence"). Thus, although OEC 404(4) ostensibly applies to defendant's criminal trial, *see* Oregon Laws 1997, chapter 313, section 38 (providing that OEC 404(4) "appl[ies] to all criminal actions pending or commenced on or after December 5, 1996"), we conclude that Article I, section 21, prohibits its application

---

[18] Article I, section 21, provides, in part, that "[n]o *ex-post facto* law * * * shall ever be passed * * *."

here because the 1991 murder that defendant allegedly committed occurred before the enactment of OEC 404(4) in 1997. *See* Or Laws 1997, ch 313, § 29 (enacting OEC 404(4)); *Fugate*, 332 Or at 214-15 (concluding that retroactive application of different evidentiary provision set out in Oregon Laws 1997, chapter 313, would violate state *ex post facto* protection).

■ Having concluded that OEC 404(4) did not limit the trial court's authority to exclude Pliska's testimony under OEC 403, we now turn to the merits of the trial court's OEC 403 ruling. As set out previously, OEC 403 provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

Under OEC 403, evidence introduced over a defendant's objection is not unfairly prejudicial simply because it is harmful to the defense. *State v. Lyons*, 324 Or 256, 280, 924 P2d 802 (1996). Instead, in deciding whether evidence is unfairly prejudicial under OEC 403, the critical inquiry is whether the evidence improperly "appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact." *State v. Barone*, 328 Or 68, 87, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000).

■ In *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987), this court explained that deciding whether relevant other crimes evidence should be excluded as unfairly prejudicial under OEC 403 requires the trial court to apply a four-step analysis. First, the trial court must assess the state's need for the evidence. *Id.* Secondly, the trial court must determine how prejudicial the evidence is, that is, to what extent the evidence may distract the jury from the issues of the defendant's trial. *Id.* Thirdly, the court must weigh the state's need for the evidence against the danger of unfair prejudice against the defendant. *Id.* Finally, as its fourth step, the trial court must make a "ruling to admit all the [state's] evidence, to exclude all the [state's] evidence[,] or to admit only part of the evidence." *Id.* Although we examine

whether the trial court properly applied the balancing test that OEC 403 prescribes for errors of law, we review the trial court's ultimate determination as to whether evidence is unfairly prejudicial under OEC 403 for abuse of discretion. *See McCathern v. Toyota Motor Corp.*, 332 Or 59, 71-72, 23 P3d 320 (2001) (applying that analysis). This court grants a trial court "broad discretion" under OEC 403 when the trial court makes findings on the record that support its discretionary ruling. *See Cox*, 337 Or at 487 (so stating).

With those considerations in mind, we examine the trial court's determination in this case that the risk of unfair prejudice and confusion of the issues "substantially outweighed" the probative value of Pliska's testimony during the guilt phase of defendant's criminal trial. In reaching that determination, the trial court appears to have accepted the state's assertion that it had a strong need for evidence of defendant's attempted murder of Pliska to prove defendant's intent and motive in Rickbeil's murder. Indeed, as a general matter, the trial court concluded that the risk of unfair prejudice resulting from evidence of defendant's attempted murder of Pliska did not outweigh its probative value. Despite that ruling, however, the trial court determined that Pliska's personal testimony was inadmissible under OEC 403 because it was concerned that Pliska's testimony would create an "incendiary moment in the trial" and that her testimony would be "totally distracting." As we understand the trial court, it was concerned both that Pliska's testimony would be emotional in light of defendant's violent crimes against her and that her personal testimony would have the effect of distracting the jury from the issues that the state needed to prove in this case.

The state does not dispute, and we conclude, that the trial court applied the balancing test under OEC 403 properly. Instead, the state contends that the trial court abused its discretion under OEC 403 in excluding the testimony of Pliska because, according to the state, the trial court's ruling was premised upon the "unwarranted assumption" that Pliska would become "emotionally overwrought or hysterical on the witness stand." In oral argument before this court, the state more specifically argued that the trial court's exclusion of Pliska's testimony during the guilt phase of defendant's

trial was based, at least in part, upon gender stereotypes that the trial court held about the capacity of female witnesses to control their emotions. We first reject that refinement of the state's argument.

In explaining its concerns about Pliska's testimony during the guilt phase of defendant's trial, the trial court stated, among other things:

> "[W]e're all lawyers, and we're involved, and we can— we can talk about [defendant's prior crimes] in a cut-and-dry way, but [Pliska is] going to be here [if she testifies]. She's going to see [defendant]. I mean, how is she not going to react to just—I mean, as the psychiatrists say, and react all over again?"

Even if we were to agree that the foregoing comment *could* be read as a form of impermissible gender stereotyping—and we do not agree as to that reading—other parts of the record demonstrate that the judge's intentions were otherwise. Most notably, in ruling that the state could not prove the Rudiger and Ferguson murders through the testimony of their fathers, the trial court expressed a similar concern about those male witnesses. Specifically, the trial court explained its exclusionary ruling as to the fathers' testimony by stating:

> "Well, I think for the same reason that I don't want to hear from Ms. Pliska during the guilt phase, I wouldn't want to hear from witnesses describing Rudiger's and Ferguson's crime scene who are going to be testifying with emotional baggage, when we can hear from detectives or someone else to establish the facts."

As we understand the trial court's statements, the trial court was concerned about admitting testimony from both Pliska and the fathers of Rudiger and Ferguson during the guilt phase of defendant's trial, because, as the victims of defendant's crimes, it would be normal for *all* those witnesses to have strong emotions about the crimes and to express those emotions in their testimony. We do not view that concern as relating to the witnesses' gender in any way. We, however, disagree with the trial court that it had authority to exclude Pliska's testimony on that basis. Unlike the fathers of Rudiger and Ferguson, Pliska could testify as to her personal knowledge of defendant's entry into her apartment and

his attempt to murder her. In addition, from our examination of the record, the trial court's concern that Pliska would not be a controlled, objective witness appears to have been only speculation. If the trial court had a concern that Pliska's testimony might be overly emotional, then the trial court's proper course would be to instruct Pliska and the state to avoid any emotionalism that might distract the jury. We conclude that the trial court abused its discretion under OEC 403 in choosing instead to exclude Pliska's testimony altogether as unfairly prejudicial.

### III.   DEFENDANT'S CROSS-APPEAL

Having disposed of the state's assignments of error on appeal, we turn to the assignments of error that defendant raises on cross-appeal. ORS 138.040 governs a defendant's right to cross-appeal when, as in this case, the state files a pretrial appeal pursuant to ORS 138.060(2)(a). ORS 138.040 provides, in part:

> "Except as provided under ORS 138.050, *the defendant* may appeal to the Court of Appeals from a judgment or order described under ORS 138.053 in a circuit court, and *may cross-appeal when the state appeals pursuant to ORS 138.060 (1)(c) or (2)(a).* The following apply upon such appeal or cross-appeal:
>
> "(1)   The appellate court *may* review:
>
> "(a)   Any decision of the court in an intermediate order or proceeding."

(Emphasis added.) By providing that this court "may" review any intermediate decision of the trial court on a defendant's cross-appeal from a state appeal under ORS 138.060(2)(a), ORS 138.040 reserves to this court's sound discretion the decision whether to undertake such a review. *Cf. Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 364, 811 P2d 627 (1991) (reaching same conclusion under ORS 28.200 in light of legislature's use of word "may" in that statute). Because this court previously has not identified the circumstances under which we will elect to exercise our statutory discretion to review a defendant's cross-appeal under ORS 138.040, we take the opportunity to do so here.

As an initial matter, we recognize that the state's right to a pretrial appeal under ORS 138.060(2)(a) is an exceptional procedure that the legislature devised in light of the state's inability to appeal from an evidentiary ruling of the trial court after the attachment of jeopardy. *See Caruso*, 289 Or at 320 (noting same). Unlike the state, however, a defendant has the full opportunity to appeal any intermediate adverse trial court ruling if that defendant is convicted of a criminal offense. *Id.* at 319. Further, if a defendant ultimately is acquitted, then any challenges that defendant raises to a trial court's intermediate rulings become moot. Thus, judicial economy supports ordinarily limiting appellate review of a defendant's challenges to a trial court's intermediate rulings until, and only if, the defendant is convicted of a criminal offense. *Cf. State v. George*, 337 Or 329, 340-41, 97 P3d 656 (2004) (concluding that it would be inappropriate to address certain of defendant's assignments of error when defendant's convictions reversed and remanded for new trial on other grounds).

Secondly, and more importantly, because a state pretrial appeal under ORS 138.060(2)(a) necessarily prolongs the restraint of a criminal defendant before any trial can be had, we view as paramount the need to resolve such appeals quickly and efficiently. *See Harberts*, 331 Or at 83 ("[p]retrial imprisonment in connection with pending charges 'shortens the constitutionally permissible measure of delay' " (quoting *Haynes v. Burks*, 290 Or 75, 83, 619 P2d 632 (1980))). In view of the considerable delay that entertaining a cross-appeal might add to that resolution, that consideration also strongly supports the view that this court should limit the exercise of its discretion under ORS 138.040 to review a defendant's challenges to a trial court's intermediate rulings raised by cross-appeal.

Having identified why we conclude that we should exercise our discretion to consider a defendant's cross-appeal under ORS 138.040 only sparingly, the question that remains is under which circumstances this court will do that. In light of the considerations articulated above, we conclude that, in respect of a defendant's cross-appeal, this court's ordinary practice will be to limit its consideration only to those assignments of error that are inextricably linked,

either factually or legally, to the state's assignments of error on appeal. Only under those circumstances can we reasonably be assured that our review of a defendant's assignments of error on cross-appeal will not contribute unnecessarily to the delay from a state pretrial appeal under ORS 136.060(2)(a). In this case, with the exception of his challenge to the relevance of the other crimes evidence that we discussed previously, 338 Or at 612 n 16, all the assignments of error that defendant raises on cross-appeal go beyond the scope of the state's appeal. We therefore decline to exercise our discretion to address any of defendant's other assignments of error on cross-appeal at this time.[19]

## IV. CONCLUSION

In sum, we conclude that ORS 138.060(2) authorizes the state's appeal to this court. Because we conclude that ORS 136.120 did not authorize it to do so, we reverse the trial court's order dismissing the indictment and entering a judgment of acquittal. In addition, we reverse the trial court's

---

[19] In addition to his challenge to the relevance of the other crimes evidence, defendant's assignments of error on cross-appeal include: (1) whether the trial court erred in admitting certain of defendant's statements to the police; (2) whether the trial court erred in overruling defendant's demurrer to the indictment and in failing to dismiss the indictment because it was "tainted" by illegally obtained evidence; (3) whether the trial court erred by failing to suppress the results of the DNA comparison using defendant's buccal sample, taken pursuant to ORS 137.076, because the police lacked probable cause to believe that he had committed a crime; (4) whether the trial court had erred by denying defendant's request for "certain DNA materials, including access to information in the CODIS [Criminal DNA Index System] database"; (5) whether the trial court erred in denying defendant's motion to declare ORS 163.150 unconstitutional; (6) whether the trial court erred by overruling defendant's motion to preclude a conviction for "capital aggravated murder" because the indictment did not allege "deliberateness"; (7) whether the trial court erred by overruling defendant's "Request for Proportionality Review"; (8) whether the trial court erred by denying defendant's motion to require the prosecution "to declare and elect aggravating evidence"; (9) whether the trial court erred by denying defendant's motion for separate jury panels for the guilt phase and the penalty phase of defendant's trial; (10) whether the trial court erred by denying defendant's motion to declare "Measure 6" as null and void; (11) whether the trial court erred by overruling defendant's demurrer because the "four questions [under ORS 163.150] include vague terms"; (12) whether the trial court erred by denying defendant's motion to "forbid the death qualification of jurors"; (13) whether the trial court erred by denying defendant's motion to compel jury records; and (14) whether the trial court erred by denying defendant's "Motion to Argue Proportionality." As noted above, with the exception of his challenge to the relevance of the other crimes evidence, none of those assignments of error is linked legally or factually to the state's appeal.

OEC 403 ruling excluding Pliska's testimony. Finally, we reject defendant's challenge to the relevance of the other crimes evidence and decline to address the merits of the other assignments of error that defendant raises on cross-appeal.

On appeal, the order of the circuit court dismissing the indictment and the judgment of acquittal are reversed, and the case is remanded for further proceedings. Cross-appeal dismissed.