Argued and submitted December 14, 2004, order of circuit court affirmed
November 14, 2005

STATE OF OREGON,
*Appellant-Cross-Respondent,*

*v.*

MORRICE ABDUL JAMES,
*Respondent-Cross-Appellant.*

(CC 00433302; SC S51472)

123 P3d 251

Kathleen M. Correll, Portland, argued the case and filed the brief for respondent-cross-appellant.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the case and filed the brief for appellant-cross-respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

DURHAM, J.

## DURHAM, J.

In this aggravated murder and robbery case, the state appeals from a pretrial order suppressing evidence of statements that defendant made to police detectives during a custodial interrogation. The question presented is whether the trial court erred in requiring the state to demonstrate that the police obtained defendant's statements in compliance with his right to counsel under Article I, section 11, of the Oregon Constitution, such as by first obtaining defendant's valid waiver of that right before eliciting the challenged statements.[1] For the reasons that follow, we hold that the trial court did not err and affirm its order suppressing evidence.

In February 2000, an assailant shot Portland taxicab driver Johnson (victim) to death in his taxicab and stole money from the vehicle. The police suspected defendant and contacted him, because a videotape from a security camera depicted him leaving an apartment building around the same time that a man had used a nearby telephone booth to summon victim's taxicab just before the killing.

Defendant agreed to speak with police about the homicide. At an interview on April 10, 2000, defendant explained to detectives Weatheroy and Kanzler that he had visited a friend at an apartment complex near the scene of the crime, but had not used the telephone booth or called a taxicab. Defendant stated that he had used his friend's telephone to call his girlfriend for a ride home. The detectives asked defendant if he would take a polygraph test. Defendant said that he would, and asked, "[C]an I bring an attorney with me?" The detectives told him that he could do so.

---

[1] Two provisions of the Oregon Constitution bear on a person's rights during a police interrogation. Article I, section 11, of the Oregon Constitution protects the right to counsel:

"In all criminal prosecutions, the accused shall have the right to * * * be heard by himself and counsel * * *."

Article I, section 12, of the Oregon Constitution protects a person against compelled self-incrimination:

"No person shall be * * * compelled in any criminal prosecution to testify against himself."

The next day, April 11, 2000, defendant quarreled with a different girlfriend. She called the police and the police arrested defendant. Because the girlfriend disclosed to police that defendant had told her that he had shot a taxicab driver, detectives Weatheroy and Kanzler interviewed defendant a second time. At the beginning of that interview, the detectives advised defendant of his *Miranda* rights, after which defendant signed a form on which he acknowledged that he had read the constitutional rights listed thereon and understood them.

The parties disagree as to what transpired during the remainder of that approximately hour-long interview. Defendant contends that, after signing the form, he requested the assistance of a lawyer more than once, but the detectives ignored his requests, telling him that a lawyer could not help him. According to defendant, detective Weatheroy warned that, if defendant claimed that he was innocent, he would get the electric chair, because no one would believe the word of a "black * * * gang member." Also, according to defendant, detective Weatheroy suggested that defendant should make a taped apology stating that the shooting had occurred accidentally during a scuffle after defendant attempted to leave the taxicab without paying. Defendant claimed that the detectives said that, if defendant did so, they could guarantee that defendant would get seven to eight years in jail on a charge of manslaughter, rather than the death penalty. Defendant testified that the detectives had used other coercive tactics and that, ultimately, he had agreed to tape a false confession because he was scared and confused.

In contrast, the state asserts that defendant voluntarily confessed to the shooting and ensuing robbery after detective Weatheroy informed him that telephone records contradicted his story. The state maintains that defendant did not mention a lawyer until detective Kanzler produced a tape recorder in order to record his formal confession. According to the detectives, it was only at that point that defendant asked, "Do I need an attorney before this?" They testified that detective Weatheroy explained that he could not advise defendant on that point, but that, if defendant wanted a

lawyer, the detectives would stop the interview. Detective Kanzler stated that defendant then responded, "I want a tape. Turn it on."

 A grand jury indicted defendant on three counts of aggravated murder and one count each of robbery in the first degree, felon in possession of a firearm, and tampering with physical evidence. Defendant filed a pretrial motion to suppress evidence of his purported statements during and attendant to his April 10 and 11, 2000, police interviews. The parties offered evidence and presented arguments on the motion. The trial court orally announced its ruling, which allowed in part and denied in part defendant's motion. In particular, the trial court suppressed defendant's statements from the April 11 interrogation because, on the question of whether defendant invoked his right to counsel, the court found parts of both versions of the facts convincing. Subsequently, the state asked the trial court to clarify and reconsider the factual basis of its oral rulings. The state argued that the legal obligations of detectives Weatheroy and Kanzler turned on whether defendant had requested a lawyer and whether he had done so equivocally or unequivocally.[2] The trial court reconsidered its oral rulings and issued a written opinion and order that again allowed in part and denied in part defendant's motion to suppress. The trial court reiterated its finding that there was a direct conflict in the credible testimony given by defendant and the detectives on the issue whether defendant had invoked his right to have a lawyer present at the April 11 interrogation. The trial court stated that, "[t]he evidence [is] in equipoise on this point." The trial court concluded,

"When the testimony is in equipoise on a point as to which the state bears the burden of proof, the court has to rule that the state has not carried its burden."

---

[2] When a suspect in police custody makes an unequivocal request to speak with a lawyer, police must grant that request and cease all questioning. *State v. Montez*, 309 Or 564, 572, 789 P2d 1352 (1990). This court adopted that rule in order "to protect a suspect in custody from being 'badgered' by the police." *Id.* (quoting *Oregon v. Bradshaw*, 462 US 1039, 1044, 103 S Ct 2830, 77 L Ed 2d 405 (1983)). When the suspect's request for a lawyer is equivocal, however, the police may ask questions intended to clarify whether the suspect meant to invoke his or her right to counsel. *State v. Meade*, 327 Or 335, 339, 963 P2d 656 (1998).

Accordingly, the trial court suppressed all statements that defendant made during the April 11 interview, including the audiotaped portion after the point at which defendant testified that he first expressed a desire for a lawyer.

The state appealed the trial court's order to this court under ORS 138.060(2)(a), which authorizes the state to take an expedited appeal directly to this court of a pretrial order suppressing evidence in a murder or aggravated murder case.[3] Defendant filed a cross-appeal under ORS 138.040,[4] challenging the trial court's decision to deny suppression of other incriminating statements.

We begin with the state's appeal. The parties agree that the April 11, 2000, interview was a custodial interrogation. This court reviews a challenge to the admissibility of a defendant's statements during custodial interrogation as an issue of law. *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991). "[W]e review legal conclusions regarding the invocation of the right to counsel for legal error." *State v. Terry*, 333 Or 163, 172, 37 P3d 157 (2001). The question of what transpired during a custodial interrogation, however, is an issue of fact for the trial court and the facts found may be—indeed, usually are—dispositive of the legal inquiry. We are bound by the trial court's findings of historical fact if evidence in the record supports them, although we assess anew whether the facts suffice to meet constitutional standards. *Stevens*, 311 Or at 135; *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621

---

[3] ORS 138.060(2) provides, in part:

"Notwithstanding subsection (1) of this section, when the state chooses to appeal from an order listed in paragraph (a) or (b) of this subsection, the state shall take the appeal from the circuit court to the Supreme Court if the defendant is charged with murder or aggravated murder. The orders to which this subsection applies are:

"(a) An order made prior to trial suppressing evidence[.]"

[4] ORS 138.040 (2001) provides, in part:

"Except as provided under ORS 138.050, the defendant may appeal to the Court of Appeals from a judgment or order described under ORS 138.053 in a circuit court, and may cross-appeal when the state appeals pursuant to ORS 138.060(1)(c) or (2)(a). The following apply upon such appeal or cross-appeal:

"(1) The appellate court may review:

"(a) Any decision of the court in an intermediate order or proceeding."
(Emphasis added.)

482

(1968). As we shall explain, that deference extends to the trial court's factual determination that the evidence that each party offered in regard to a particular disputed fact is equally convincing.[5]

■ As a threshold matter, we address the trial court's asserted inability to come down decisively on one side or the other on the central question of whether defendant invoked his right to counsel. As noted, the state asserts that a finding that the evidence on that issue is in "equipoise" was a "non-finding" that is not binding on this court and that this court therefore should remand for further factual findings. For the following reasons, we disagree.

There is a difference between a trial court's failure or refusal to make a finding of fact on a pertinent factual issue and a trial court's determination that the conflicting evidence in the record on a factual issue is in equipoise. The latter determination means that, in the trial court's view, the record contains some evidence that supports the factual claim of the party charged with the burden of persuasion, but also contains evidence that supports a different factual inference. As a result, the trial court cannot find as true the fact that the party with the burden of persuasion asserts. A statement by a trial court that disputed evidence is in equipoise is an observation about what the record evidence proves or does

---

[5] This court held in *Ball*, 250 Or at 487, that, if the trial court fails to make findings on all historical facts, and there is evidence from which the trial court could decide those disputed facts more than one way, we will presume that the court found the facts in a manner consistent with the trial court's ultimate conclusion. Here, the state contends that this court cannot employ that familiar rule to "fill the factual void" in this "unique" type of case. Instead, the state argues, "where a court states that it is *not* making factual findings, and instead bases its ruling on purely a legal proposition," this court should review for errors of law under *Meade*, 327 Or at 342 n 7.

There are two problems with that assertion. First, the state mischaracterizes the trial court's comments in this case. The trial court did not announce that it was "not making factual findings" as the state claims it did. Rather, in a colloquy with the prosecutor, the trial court stated, "I have not failed to make findings [on the invocation of the right to counsel]. I have not declined to make findings. I have said that the finding is impossible to make. And that's different." Second, as we explain in this opinion, we agree with the trial court that a determination that evidence about a disputed factual issue is in equipoise permissibly conveys a factfinder's view that conflicting evidence fails to preponderate in favor of or against a particular resolution of the factual dispute. A trial court's determination of that kind is binding on this court.

not prove and, consistent with familiar rules of appellate review, it is binding on an appeal of the trial court's judgment. As this court decided in *State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003), this court is bound by a trial court's determination that a party's evidence is not sufficiently persuasive:

> "[W]e are bound by a trial court's 'finding' that a party's evidence is not sufficiently persuasive * * * because [that rule] incorporates the same judicial respect for the trial court's weighing of the evidence [as do the familiar rules set out in *Ball*, 250 Or at 487 and *State v. Miller*, 300 Or 203, 227, 709 P2d 225 (1985), *cert den*, 475 US 1141, 106 S Ct 1793, 90 L Ed 2d 339 (1986)]. Thus, unless the evidence in a case is such that the trial court as finder of fact could decide a particular factual question in only one way, we shall in the future consider ourselves equally bound by a trial court's acceptance or rejection of evidence."

Finally, the state argues that a determination that evidence is in equipoise operates differently in a suppression hearing than it does in a trial on a party's ultimate claim for relief. We disagree. There is no functional difference in the role of the finder of fact weighing the evidence on a preliminary fact question in a suppression hearing and weighing the evidence on the ultimate issue at trial. In each of those settings, a determination that disputed evidence is in equipoise reflects the factfinder's conclusion that the evidence in the record does not preponderate either in support of or against the truth of the fact in controversy.

■ We turn to a second question that this case poses: What is the consequence of a trial court's finding that evidence is in equipoise as to whether a defendant unequivocally invoked his or her right to counsel after having previously waived that right? The answer to that question depends on which party bears the burden of persuasion on the issue whether the police afforded defendant the right to counsel before obtaining his statements, because after a determination that the evidence is in equipoise, the party with that burden loses.

Because the subject of the parties' burdens of production of evidence and persuasion "is among the most

slippery in the larger areas of procedure and evidence," Christopher B. Mueller and Laird C. Kirkpatrick, *Evidence: Practice Under the Rules* § 3.1, 159 (2d ed 1999), a discussion of the terms "burden of proof," "burden of production," and "burden of persuasion" will help to frame our analysis.

In the early part of the twentieth century, a number of scholars and courts recognized that practitioners were using the term "burden of proof" to describe two distinct concepts, which the courts now commonly refer to as the "burden of persuasion" and the "burden of production." *See Director, Office of Workers' Compensation Programs v. Greenwich Collieries*, 512 US 267, 272-76, 114 S Ct 2251, 129 L Ed 2d 221 (1994) (discussing history of efforts by courts and scholars to promote terminological accuracy).[6] That linguistic imprecision led John Henry Wigmore to lament the "ambiguity of phrase and confusion of terminology under which our law has so long suffered." John Henry Wigmore, 9 *Evidence in Trials at Common Law* § 2485, 283 (Chadbourn rev 1981). This court observed in 1920,

"The phrase 'burden of proof' has two meanings: One to express the idea that a named litigant must in the end establish a given proposition in order to succeed; the other, to express the idea that at a given stage in a trial it becomes

---

[6] *Greenwich Collieries*, offers an illuminating description of the efforts of various judges and scholars to eliminate the ambiguity of the term "burden of proof," beginning with the seminal Massachusetts case of *Powers v. Russell*, 30 Mass 69 (1833), in which Chief Justice Lemuel Shaw attempted to distinguish the burden of proof from the burden of producing evidence. *See also Wilson v. Omaha Indian Tribe*, 442 US 653, 669, 99 S Ct 2529, 61 L Ed 2d 153 (1979) ("The term 'burden of proof' may well be an ambiguous term connoting either the burden of going forward with the evidence, the burden of persuasion, or both."); *Russell v. Ford Motor Company*, 281 Or 587, 596-97, 575 P2d 1383 (1978) ("once the defendant has come forward, we believe that the burden of proof (or again, more precisely, the risk of nonpersuasion) must remain with the plaintiff; if the scales remain in equilibrium on the point, plaintiff is the loser" (quoting *Southwire Co. v. Beloit Eastern Corp.*, 370 F Supp 842, 857-58 (ED Pa 1974)); *Raz v. Mills*, 231 Or 220, 227, 372 P2d 955 (1962) ("*Haltom v. Fellows*[, 157 Or 514, 73 P2d 680 (1937)] * * * confused the defendant's burden of going forward with evidence to meet a *prima facie* case with the ultimate burden of proof which, of course, remains upon the plaintiff."); Laird C. Kirkpatrick, *Oregon Evidence* § 305.03, Art III-3 (4th ed 2002) (" '[B]urden of proof' is a frequently confused concept. It may refer to the party's burden of producing evidence, or it may refer to a party's obligation to persuade the trier of fact regarding the existence or nonexistence of a fact. In Article III [of the Oregon Evidence Code], these two meanings of burden of proof are clearly separated.").

the duty of a certain one of the parties to go forward with the evidence."

*Hansen v. Oregon-Wash. R. & N. Co.*, 97 Or 190, 210, 188 P 963 (1920). In 1923, the United States Supreme Court began consistently to distinguish between the "burden of proof," which it defined as the burden of persuasion, and the concept that it increasingly referred to as the "burden of production," meaning "the burden of going forward with the evidence." *Greenwich Collieries*, 512 US at 274. This court noted in 1985 that the term "burden of proof" itself was "outdated," stating that the term is "consonant with the newer term 'burden of persuasion.'" *State v. Rainey*, 298 Or 459, 464 n 6, 693 P2d 635 (1985).[7]

■ Further complicating matters, many practitioners and scholars confuse the term "burden of proof" with the term "standard of proof." The standard of proof is not a burden. Rather it is the measure of conviction that a party must achieve in the mind of the trier of fact in order to meet the burden of persuasion, *e.g.*, proof beyond a reasonable doubt, by clear and convincing evidence, or by a preponderance of the evidence. *See Addington v. Texas*, 441 US 418, 423, 99 S Ct 1804, 60 L Ed 2d 323 (1979) (A standard of proof operates, within the concept of due process, to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.") (quoting *In re Winship*, 397 US 358, 370, 90 S Ct 1068, 25 L Ed 2d 368 (1970) (Harlan J., concurring)).

Finally, one must guard against confusing the burden that a prosecutor bears to persuade the judge or jury that

---

[7] This court first used the term "burden of persuasion" in 1957 in *Gum, Adm. v. Wooge et al*, 211 Or 149, 160, 315 P2d 119 (1957). It did not use the term "burden of production" until 1984, in *Teledyne Wah Chang v. Energy Fac. Siting Council*, 298 Or 240, 249, 692 P2d 86 (1984), although the court did begin using the equivalent phrase "burden of going forward with the evidence" as early as 1916. *See Hancock Land Co. v. Portland*, 82 Or 85, 89, 159 P 969 (1916) (quoting Edward W. Tuttle, 9 *Encyclopedia of Evidence* 885 (Edgar W. Camp and John F. Crowe eds., 1906)). *See also Carroll v. Royal Mail Steam Packet Co.*, 130 Or 294, 302, 279 P 861 (1929) ("It is not strictly accurate, however, to say that the burden of proof shifts, unless such words are used to express the idea that at a given stage of the trial it becomes the duty of a certain one of the parties to go forward with the evidence.") (citing *Hansen*, 97 Or at 210-11).

he or she has proven all elements of a criminal case by the required standard of proof—or a criminal defendant's burden of persuasion as to affirmative defenses—and the burden of persuading a judge as to the existence or nonexistence of a specific fact at issue. Those are distinct concepts. Unfortunately, many attorneys, scholars, and courts have used the ambiguous phrase "burden of proof," rather than the more precise phrases "burden of persuasion" and "burden of production," in analyzing them. This has led, at times, to the use by practitioners of the same phrase to refer to different concepts, as in the case at bar. To avoid confusion in the future, this court will use the phrases "burden of persuasion" and "burden of production," as we define them below, rather than the inexact phrase "burden of proof."

■■■■■ We take the definitions of the pertinent burdens from the Oregon Evidence Code.[8] OEC 305 describes the burden of persuasion:

"A party has the burden of persuasion as to each fact the existence or nonexistence of which the law declares essential to the claim for relief or defense the party is asserting."

The burden of persuasion summarizes the obligation of a party to convince the trier of fact that the party's assertion about an essential fact is true. If that party does not establish the truth of that essential fact in the mind of the factfinder by the requisite standard of proof, then the factfinder cannot find that the fact exists. Oregon Evidence Code, Report of the

---

[8] Although the rules of evidence, except privilege rules, do not govern the determination of preliminary questions of fact concerning the admissibility of evidence in a hearing on a motion to suppress evidence, *State v. Wright*, 315 Or 124, 129, 843 P2d 436 (1992) (interpreting OEC 104(1)), the " 'courts may apply the rules of evidence by analogy' " in a suppression hearing. *Id. quoting* Laird C. Kirkpatrick (2d ed 1989).

From 1862 until 1981, Oregon statutes described only the burden of proof. With the exception of punctuation, the definition remained unchanged throughout that time. *See* General Laws of Oregon, Civ Code, ch IX, § 777, p 343 (Deady 1845-1864). *Former* ORS 41.210 (1979), *repealed by* Or Laws 1981, ch 892, § 98, provided:

"The party having the affirmative of the issue shall produce the evidence to prove it. Therefore, the burden of proof lies on the party who would be defeated if no evidence were given on either side."

The Oregon Legislative Assembly abandoned the phrase "burden of proof" in favor of the more precise terms "burden of persuasion" and "burden of production" when it promulgated the Oregon Evidence Code in 1981. Or Laws 1981, ch 892, §§ 14-16. OEC 305 and 307 replaced *former* ORS 41.210.

Legislative Interim Committee on the Judiciary, December 1980, 25 (citing Edmund Morris Morgan, 1 *Basic Problems of Evidence* 19 (1954)).

■ The law's assignment of the burden of persuasion is a method for allocating the risk of nonpersuasion. Wigmore, 9 *Evidence* § 2485 at 285. The burden of persuasion is, in essence, a method of breaking ties regarding disputed factual questions. If the trier of fact, after having heard the evidence, is able to render a finding in favor of one party or the other by the requisite standard of proof, the burden of persuasion does not come into play. If the factfinder cannot say in whose favor the evidence weighs more heavily, then the factfinder must resolve the evidentiary question against the party upon whom the burden of persuasion rests. *See Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 394-95, 737 P2d 595 (1987) (discussing principle).

OEC 307 describes the operation of the burden of production of evidence:

"(1) The burden of producing evidence as to a particular issue is on the party against whom a finding on the issue would be required in the absence of further evidence.

"(2) The burden of producing evidence as to a particular issue is initially on the party with the burden of persuasion as to that issue."

The word "burden," when used in reference to a criminal proceeding, however, can be misleading. In a proceeding on a motion to suppress statements obtained while a defendant was in custody, as in the instant action, the defendant is the moving party but the state bears the burden of persuading the trial court that the accused voluntarily, knowingly, and intelligently waived his or her rights under the state and federal constitutions to have counsel present during questioning. *See State v. Acremant*, 338 Or 302, 321, 108 P3d 1139 (2005) (to be valid under both state and federal constitutions, "waiver of the right to counsel must be knowing, intelligent, and voluntary under totality of the circumstances"). In this context, the defendant, as the moving party, may seek suppression of disputed statements. However, in doing so, the defendant does not assume a burden of persuasion with respect to any fact concerning the right to counsel.

In the case at hand, the state acknowledges that the government bears the burden of persuasion as to whether a "defendant was advised of his *Miranda* rights and voluntarily waived those rights." Defendant concedes—and the trial court found—that the state met that burden because, immediately prior to the April 11 interrogation, detectives read defendant his *Miranda* rights and defendant signed a form indicating that he understood his rights. The parties disagree, however, about whether a "burden" then shifts to defendant to prove that he subsequently invoked the right to counsel. The question is significant because, if the evidence shows that a defendant unequivocally requested counsel, and the authorities continued questioning him or her thereafter, the trial court must suppress the defendant's subsequent statements. *State v. Simonsen*, 319 Or 510, 518, 878 P2d 409 (1994).

The state asserts that, once it has met its burden of persuasion to show a voluntary waiver of the right to counsel, it has made a *prima facie* showing of compliance with *Miranda*, rendering subsequent statements by a defendant presumptively admissible. That presumption, the state argues, operates to shift the burden to the defendant to prove that he or she unequivocally invoked his or her right to counsel and that the detectives continued their interrogation despite that invocation of rights. The state contends that the court may suppress a defendant's post-*Miranda*-waiver statements only if the defendant persuades the trier of fact that the government obtained those statements through coercion or some other improper conduct. If, as here, the evidence is in equipoise on that factual issue, the state argues that the defendant "has not defeated the presumption of continued validity of the initial waiver." Applying that rule to the facts of this case, the state explains that, because the trial court "could not or would not find" that defendant invoked his right to counsel, "the validity of the initial waiver is presumed to have continued." Moreover, the state contends that, because defendant did not meet his burden of proving that he invoked his right to counsel and that detectives thereafter continued to question him, "there exists no factual predicate for suppression" under either the Oregon or United States

constitutions. Therefore, according to the state, the trial court erred in suppressing defendant's statements.

In contrast, defendant argues that the burden of persuading the trial court that a defendant's statements were voluntary and therefore admissible remains with the prosecution from the beginning of a custodial interrogation to the end, even after the defendant has waived his or her rights at the commencement of interrogation. Defendant contends that a trial court must determine the admissibility of all custodial statements that the prosecution seeks to introduce into evidence. *Miranda v. Arizona*, 384 US 436, 469, 86 S Ct 1602, 16 L Ed 2d 694 (1966). Defendant acknowledges that, once the state has proved a voluntary waiver, he must offer evidence of a subsequent assertion of his constitutional right to counsel. Defendant claims that he did so by testifying that he invoked his right to counsel and that detectives continued to question him thereafter. He concludes that the trial court properly held that, because the evidence was in equipoise on the issue of invocation, the state did not meet its burden of persuasion. Consequently, the trial court did not err in suppressing defendant's statements.

As noted earlier, the state bears the burden of persuading the trier of fact that it afforded the right to counsel in connection with an interrogation of defendant. That burden does not shift.

■ The state, however, asks us to apply to the issue of the state's compliance with the right to counsel the federal approach to certain search and seizure cases that this court adopted in *State v. Johnson*, 335 Or at 520-21. The state's reliance on *Johnson* is misplaced. In *Johnson*, the issue was whether the trial court erred in suppressing evidence that the police had seized pursuant to a valid search warrant on the ground that the seizure was tainted by an earlier, unlawful seizure of the same evidence. On review, this court observed that, normally, when state agents have acted under authority of a warrant, Oregon law assigns the burden of persuasion to the party seeking suppression—the defendant—to prove the unlawfulness of the search or seizure. *Id.* at 520 (citing *State v. Sargent*, 323 Or 455, 460, 918 P2d 819 (1996)

(stating that rule)); ORS 133.693(3) (same). This court further noted, however, that no Oregon law addressed a situation in which the police first seized the evidence in question unlawfully and the defendant asserted that a later "reseizure" of that same evidence pursuant to a warrant was tainted by the initial illegal search. Having determined that the approach taken by several federal courts was reasonable and consistent with the rule articulated in *Sargent*, this court, *in Johnson*, adopted the procedure set out by the United States Supreme Court in *Alderman v. United States*, 394 US 165, 89 S Ct 961, 22 L Ed 2d 176 (1969) that, "[a]lthough a defendant seeking suppression 'must go forward with specific evidence demonstrating taint,' the government has 'the ultimate burden of persuasion to show that its evidence is untainted.' " *Johnson*, 335 Or at 520. In other words, although the party with the ultimate burden of persuasion usually also bears the initial burden of production, in suppression hearings involving a search pursuant to a warrant allegedly tainted by earlier police illegality, the defendant bears the initial burden of *production*, while the state bears the ultimate burden of *persuasion*.

Under *Johnson*, the defendant's burden of production amounts to a duty to demonstrate "a 'factual nexus' between the illegality and the challenged evidence—at a minimum, the existence of a 'but for' relationship." 335 Or at 520 (citations omitted). That test is distinguishable from, and more rigorous than, the one that a defendant must meet in a suppression hearing involving a defendant's incriminating statements. The defendant bears the initial burden in suppression hearings under *Johnson*. If the defendant does not meet the factual nexus test under *Johnson*, he or she loses. The court presumes that the warrant is lawful because an independent magistrate has determined that probable cause exists. *Id.*, 335 Or at 521 (citing 5 Wayne R. LaFave, *Search and Seizure*, § 11.2(b), 39 (3d ed 1996). Under *Johnson*, once a defendant is able to show a factual nexus between the evidence and some prior governmental misconduct, the presumption of the regularity of the warrant is overcome and the burden of persuasion shifts to the government to prove that the police misconduct did not taint the evidence. *Johnson*, 335 Or at 521. In short, this court assigned to the defendant

an initial burden of production, measured by a "but for" factual nexus test, and left to the state the ultimate burden of persuasion.

We apply a different rule in the context of the right to counsel because there is no presumption of regularity of government action during a custodial interrogation. That is why the initial burden of production lies with the government in suppression hearings concerning custodial interrogations. Moreover, because the government enjoys no presumption that the police afforded the right to counsel to the suspect in the interrogation context, the government properly bears the burden of persuasion in a suppression hearing. The factors that this court ordinarily considers in allocating the burden of persuasion, including access to the evidence, fairness to litigants, and the probability of the existence or nonexistence of the pertinent facts, support that conclusion. *See* Report of the Legislative Interim Committee on the Judiciary at 25. (listing those factors).

From the foregoing discussion, we can summarize the following principles concerning the burdens that apply in the context of a motion to suppress statements obtained during a police interrogation. The burden of persuasion regarding compliance with the right to counsel remains with the state and does not shift. As the party with the burden of persuasion, the state bears an initial burden of production to show that the police afforded the right to counsel or that defendant validly waived his or her right to counsel. Once the state has offered such evidence, the trier of fact can accept it. And, because the trier of fact may accept that evidence, the defendant risks losing unless the defendant produces evidence that he or she subsequently invoked the right to counsel. *See State v. Ruiz*, 251 Or 193, 195, 444 P2d 32 (1968) (stating that, after the police deliver *Miranda* warnings and the suspect understands his or her rights, the burden is upon suspect to invoke rights) (interpreting *Miranda*, 384 US at 474). The state then can decide to adduce still further evidence that the defendant did not invoke or validly waived his or her rights, or it can risk success on the record as it stands at that point. If the trial court finds from the evidence in the record—whatever that evidence is, and whoever offered it—that the defendant unequivocally invoked his or her right to

counsel, and that the authorities continued their questioning, the court must suppress the defendant's subsequent statements. If the trial court finds that the defendant did not invoke his or her right to counsel, or invoked it but validly waived that right after invoking it, the subsequent inculpatory statements are not subject to suppression. And, finally, when, as here, the trial court determines that the evidence regarding invocation of the right to counsel is in equipoise, the state necessarily has failed to meet its burden of persuasion, and the state loses.

In the case at hand, the state met its initial burden to produce evidence that, if believed, would show that defendant had notice of and waived his right to counsel. It was then defendant's choice either to hope the trier of fact would not accept that evidence or to produce evidence showing either that he had not waived his rights or that, after waiving his rights, he had invoked his right to counsel and the police nevertheless continued to interrogate him. Defendant chose to solve that question by testifying that he had requested counsel and that the police continued to question him. The state then pointed to evidence in the record indicating that defendant had not invoked his rights unambiguously and that he had voluntarily requested that the detectives turn on the tape recorder so that he could make a confession. Subsequently, the trial court accepted aspects of both parties' evidence as being credible on the issue of the invocation of the right to counsel. However, the trial court could not resolve the conflict in the evidence about whether the police had continued to question defendant consistent with his right to counsel. As to that question, in order for the state to prevail, it was essential that the evidence supporting the state's position preponderate over the evidence supporting defendant's position. The trial court determined that it did not. Having therefore concluded that the state failed to meet its burden of persuasion, the trial court correctly ruled that defendant's statements must be suppressed.

■■ We turn to the assignments of error that defendant raises on cross-appeal. When the state appeals an intermediate ruling of the trial court pursuant to ORS 138.060(2)(a), as it has done here, the defendant may cross-appeal under

ORS 138.040. ORS 138.040(1)(a) provides that, on a cross-appeal, "[t]he appellate court *may* review * * * [a]ny decision of the court in an intermediate order or proceeding." (Emphasis added.) In *State v. Shaw*, 338 Or 586, 618, 113 P3d 898 (2005), this court decided that it ordinarily would exercise that discretion by declining to review such decisions on cross-appeal until the trial court had entered a judgment. In *Shaw*, this court also stated that it will limit its consideration of a defendant's cross-appeal "only to those assignments of error that are inextricably linked, either factually or legally, to the state's assignments of error on appeal." *Id.* at 618-19. In the case at hand, all defendant's assignments of error go beyond the factual and legal scope of the state's appeal.[9] We therefore decline to exercise our discretion to address defendant's assignments of error on cross-appeal.

The order of the circuit court is affirmed.

---

[9] Defendant's assignments of error on cross-appeal are as follows: (1) the trial court erred in ruling that defendant was not illegally arrested when he was hand-cuffed by police during a stop in relation to the domestic violence incident with his girlfriend; (2) the trial court erred by failing to suppress evidence obtained when the police exploited that illegal arrest in order to question defendant about why Portland police detectives wished to talk with him; (3) the trial court erred by failing to suppress certain statements to and overheard by detectives Weatheroy and Kanzler because such statements were obtained by exploiting defendant's earlier illegal arrest; and (4) the trial court erred by failing to suppress evidence of two phone calls defendant made immediately following the custodial interrogation at issue in this case.