Argued and submitted February 27, reversed and remanded July 23, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## TIMOTHY ALLEN SAWYER,
*Defendant-Appellant.*

Multnomah County Circuit Court
041053460; A132156

190 P3d 409

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General.

Before Brewer, Chief Judge, and Schuman, Judge, and Deits, Judge pro tempore.

SCHUMAN, J.

## SCHUMAN, J.

Defendant appeals a conviction for driving under the influence of intoxicants (DUII), ORS 813.010, assigning error to the trial court's denial of his motion to suppress the results of his breath test. He argues that he was denied his right to counsel under Article I, section 11, of the Oregon Constitution because he was not afforded an opportunity to call an attorney in private before taking that test. We agree with defendant, and we therefore reverse and remand.

The relevant facts are uncontested. Deputy Yohe observed defendant driving erratically and pulled him over. Yohe asked defendant if he was willing to submit to several field sobriety tests, and defendant agreed. After defendant failed the horizontal gaze nystagmus test and the "walk and turn" test, Yohe arrested him for DUII, read him his *Miranda* rights, and put him in a police car for transport to the station. On the way there, defendant asked if he could call his girlfriend and an attorney. Yohe told him that he would be able to make those calls at the police station.

When they arrived at the station, defendant was put in a holding cell until another officer, Deputy Cordes, was available to interview him. Yohe informed Cordes that defendant had requested to speak to an attorney. There was no telephone in the holding cell.

After approximately half an hour, Cordes took defendant from the holding cell to a room containing a Breathalyzer, a table, a telephone, and telephone directories. Without indicating that he would leave defendant alone, Cordes told him, "You can use the phone to call anyone you want, including a lawyer." Defendant did not respond and continued to sit quietly. Cordes began the 15-minute observation period that is required before conducting a breath test. After another pause, Cordes again asked defendant, "Do you want to use the phone?" Defendant responded, "I would rather wait." Cordes then told defendant that he could use the phone at any time, but nothing in the record indicates that he told defendant that he would leave the room to allow defendant to speak to an attorney in private.

In response to questioning by Cordes, defendant admitted that he had consumed approximately three beers. Cordes read defendant the Department of Motor Vehicles form explaining the consent that drivers impliedly give to take a breath test and then asked defendant if he would do so. Defendant agreed. He registered a blood alcohol content of .13 percent, which is .05 percent above the level sufficient to support a conviction for DUII. ORS 813.010(1)(a).

Defendant was convicted by a jury of DUII.[1] On appeal, he argues that the trial court erred in denying his motion to suppress the results of the breath test because he had no opportunity to consult with an attorney in private before he agreed to take the test.

In *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988), the Oregon Supreme Court held that "under the right to counsel clause in Article I, section 11, an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." The court amplified its description of that right in *State v. Durbin*, 335 Or 183, 193-94, 63 P3d 576 (2003), holding "that a driver arrested for DUII has, upon invoking the right to counsel, the right to a reasonable opportunity to consult *privately* with counsel before deciding whether to submit to a breath test." (Emphasis added.)

We applied the holding from *Durbin* in *State v. Matviyenko*, 212 Or App 125, 157 P3d 268 (2007), a case with facts that are similar to the ones here. While being transported to the police station, the defendant in *Matviyenko* stated that he wanted to call an attorney, and an officer told him that he would be able to do that when they arrived. At the station, the officer took the defendant to a breath test room. The officer and the defendant sat down at a desk that had a telephone and phone books on it. The officer informed the defendant that he could "make any phone calls at that time." *Id.* at 127. The defendant used the phone to call his wife, but did not call an attorney. He subsequently agreed to take a breath test.

---

[1] Defendant was also convicted of reckless driving in a trial to the court. He does not challenge that conviction on appeal, and we do not address it.

We concluded that the defendant's request to call an attorney invoked his right to speak to an attorney in private. Further, we concluded that the officer's presence in the room had a "chilling effect" that interfered with the defendant's right to counsel. We stated,

> "[W]hen a DUII arrestee has asked to call an attorney, if an officer intends to remain seated in the room until the call is made, we think that the onus is properly on the officer to inform the arrestee—before the call is made—that, once he or she contacts an attorney, privacy will be afforded. That is because a person in circumstances such as these could reasonably conclude that, if an officer says that the person may make his or her phone call and then sits down at the desk, the officer is planning to remain for the duration of the calls. Such a person would rightly assume that any statements made in the officer's presence would not be confidential, and thus be inclined not to make the call."

*Id*. at 130 (internal quotation marks and citation omitted).

Until the point when defendant said, "I would rather wait," the facts in this case relevant to the breath test are identical to the facts in *Matviyenko*. Both defendants requested to speak to an attorney while being transported to the police station; both were told that they would be able to do so on arrival; both were escorted to a breath test room containing a telephone and phone books; both were told that they could make any calls they wished to make; and neither was told, or given any reason to believe, that the officer, who was sitting across from them at a desk, would leave the room if they wished to speak to an attorney in private.

The state argues that this case is distinguishable from *Matviyenko* because defendant waived his right to speak to an attorney when he stated, "I would rather wait." Because defendant was not notified that he would be given an opportunity to speak to an attorney in private, we do not interpret defendant's statement that he would wait to call an attorney as a waiver of his right to consult with counsel. To be valid, "a waiver of the right to counsel must be knowing, intelligent, and voluntary under the totality of the circumstances." *State v. Acremant*, 338 Or 302, 321, 108 P3d 1139, *cert den*, 546 US 864 (2005). The state has the burden of persuasion with respect to the validity of the waiver. *State v.*

*James*, 339 Or 476, 488, 123 P3d 251 (2005). By the time defendant stated that he would wait to contact an attorney, Cordes had twice informed defendant that he could make any phone calls he wished to make, but Cordes had remained seated after making both offers. As we noted in *Matviyenko*, a person in these circumstances could reasonably assume that the officer would remain in the room while the person spoke with an attorney. In other words, the state adduced no evidence to demonstrate that the right that defendant knowingly waived was the right to speak *privately* with an attorney. Indeed, the court (which did not have the benefit of our decision in *Matviyenko*) ruled that no such evidence was necessary, observing,

> "It is true that the officer was seated across the desk from the defendant, and I weighed whether or not they have an additional obligation to say to him that he would be allowed to speak with an attorney in private, and I ultimately concluded that they do not need to include that in their advice."

Thus, we conclude that defendant's right under Article I, section 11, to consult with counsel was violated and the trial court erred in denying defendant's motion to suppress.

■■     In its brief to this court, the state argues that, even if the trial court erred in denying the motion to suppress, we should not reverse the conviction because the admission of the breath test result was harmless. We may affirm a conviction even if evidence was erroneously admitted if there is little likelihood that the error affected the verdict. *State v. Titus*, 328 Or 475, 482, 982 P2d 1133 (1999). However, at oral argument, the state conceded that, under *State v. Coen*, 203 Or App 92, 125 P3d 761 (2005), *rev den*, 341 Or 141 (2006), its harmless error argument lacked merit. We agree.

Under ORS 813.010(1), a person can be convicted of DUII if the jury finds that, while the person was driving, the person had a blood alcohol content of .08 percent or more as demonstrated by a breath or blood test, ORS 813.010(1)(a), or that the person was "under the influence of intoxicating liquor," ORS 813.010(1)(b). The state argues in its brief that the error in admitting the breath test was harmless because overwhelming evidence established that defendant was under the influence of intoxicating liquor. We rejected that

argument in *Coen*. Despite the fact that the defendant in that case had admitted to drinking 15 to 16 beers, we concluded that we could not say that the evidence of his breath test had little likelihood of affecting the verdict, because we had no way of knowing whether the jury found the defendant guilty based on his breath test or based on a finding that he was under the influence. *Id*. at 106-07. We stated that, where a defendant contests that he was under the influence "and the jury instructions allow conviction based on blood alcohol content alone," erroneously admitting breath test results "clearly has some likelihood of affecting the verdict." *Id*. at 106.

In this case, the jury was instructed that, to find defendant guilty, it had to find that defendant "had .08 percent or more by weight of alcohol in his blood as shown by chemical analysis of his breath or blood OR was under the influence of intoxicating liquor." Because the jury could have reached that finding based solely on the erroneously admitted breath test result, we cannot say that the result of the breath test had little likelihood of affecting the verdict.

Reversed and remanded.