Argued and submitted August 27, reversed and remanded December 31, 2008

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# DONNIE J. CARLSON,
true name Donnie Jason Carlson,
*Defendant-Appellant.*

Washington County Circuit Court
D050963T; A130209

199 P3d 885

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief were Ingrid Swenson, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Presiding Judge, and Schuman, Judge, and Riggs, Senior Judge.

SCHUMAN, J.

## SCHUMAN, J.

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010, assigning error to the trial court's denial of his motion to suppress the results of his breath test. He argues that he was denied the right to counsel under Article I, section 11, of the Oregon Constitution,[1] because he was not given a reasonable opportunity to consult privately with counsel before deciding whether to consent to the test. We reverse and remand.

The relevant facts are not in dispute. Deputy Braun stopped defendant after seeing him commit various traffic violations. Braun noticed that defendant's eyes were "watery," his eyelids were "droopy," and the muscles in his face were "relaxed." Braun also noted a "strong odor of alcohol" emanating from defendant's truck. Defendant informed Braun that he had just come from a bar and that he had consumed two beers while there. At that point, Braun believed that he had probable cause to arrest defendant for DUII.

Braun asked defendant if he was willing to submit to field sobriety tests, and defendant stepped out of the truck. Braun, standing five feet from defendant, detected a "moderate" odor of alcohol coming from him and observed that he was "noticeably swaying from front to back." After defendant refused to perform the field sobriety tests, Braun arrested him and read him his *Miranda* rights. Defendant responded, "I want to talk to my lawyer."

Defendant was taken to the Washington County Jail and put in a holding cell that had a telephone for inmate use. He was handcuffed at the time. He again requested to speak to his lawyer. Because defendant was handcuffed, and because cell phone use is prohibited inside the jail, Braun retrieved the telephone number of defendant's lawyer from defendant's cell phone and attempted to place the call for defendant on the inmate phone, which Braun had never used before, following the instructions posted on that phone. After

---

[1] Article I, section 11, of the Oregon Constitution provides, in part, "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel[.]"

dialing the number, Braun heard a "tone" that suggested to him that the call had not gone through:

"[Prosecutor]: What happened when you attempted to call that number on the inmate phone there?

"[Braun]: I didn't receive any response. I think there was some sort of tone.

"[Prosecutor]: Why do you think that was?

"[Braun]: Well, it was the lawyer's cell phone that I was attempting to call. The phone that is designated for prisoner use is not capable of making collect calls to cell phones.

"[Prosecutor]: Do you know if cell phones accept collect calls?

"[Braun]: They do, but there's legal issues with regard to that.

"* * * * *

"[Defense Attorney]: So you don't know what that different tone meant, correct?

"[Braun]: Correct.

"[Defense Attorney]: It could indicate the phone is not working correct, right?

"[Braun]: It could."

Braun momentarily stepped out of the room to confirm with jail staff that the phone was working and, because they assured him that it was, he did not try to place the call a second time.

Braun told defendant that he was unable to contact the lawyer and offered defendant a telephone book to find the number of a different lawyer, although he did not communicate to defendant that he would help defendant, who was handcuffed, to use it. Defendant refused to look at the phone book and stated, "I want my lawyer and only my lawyer." He then said that he wanted to contact his girlfriend so that she could "get [his] lawyer to come down to the jail." Braun attempted to call defendant's girlfriend's number on the inmate phone but again heard the same "tone" and concluded

that the call had not gone through. The girlfriend's phone was a landline.

Defendant thereafter submitted to a breath alcohol test. He registered a blood alcohol content of .1, which is .02 above the level sufficient to support a conviction for DUII. ORS 813.010(1)(a). He was charged with DUII. At the pretrial hearing on his motion to suppress, he argued that the results of his breath test should have been suppressed because he was denied a reasonable opportunity to consult privately with counsel before consenting to the test. The trial court denied defendant's motion, concluding that he "was given a reasonable opportunity, maybe more than a reasonable opportunity."

On appeal, defendant renews the arguments he made to the trial court, maintaining, in part, that the results of the breath test should have been suppressed because Braun "was unable to properly use the telephone" and thus denied defendant a reasonable opportunity to consult confidentially with counsel. The state responds that defendant was given repeated opportunities to consult with counsel and simply failed to use them; in particular, the state points to the fact that Braun "offered defendant the opportunity to use the phone book to find another number for his attorney or for the number of a different attorney, but defendant refused and steadfastly insisted he wanted to speak to his attorney and to nobody else."

We review the denial of defendant's motion to suppress for errors of law, deferring to the trial court's factual findings where there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Where findings are not made on all facts, and there is evidence from which those facts could be decided more than one way, we will presume that they were decided in a manner consistent with the trial court's ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

In *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988), the Supreme Court held that "under the right to counsel clause in Article I, section 11, an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test."

That right encompasses the right to consult with counsel in private. *State v. Durbin*, 335 Or 183, 191, 63 P3d 576 (2003); *State v. Matviyenko*, 212 Or App 125, 129, 157 P3d 268 (2007). Further, a request to consult with counsel, even if it does not contain an express request to consult with counsel in private, "by itself[ ] indicates that the arrested driver wants the essential elements that inhere in that right, including the opportunity for confidential communication." *Durbin*, 335 Or at 191. The state has the burden to show that a defendant was afforded a reasonable opportunity to consult with counsel in private. *Matviyenko*, 212 Or App at 129. If the state argues that defendant waived that right, the state also has the burden of showing that waiver. *State v. Sawyer*, 221 Or App 350, 354-55, 190 P3d 409 (2008) (citing *State v. James*, 339 Or 476, 488, 123 P3d 251 (2005)).

■      In this case, defendant repeatedly asked to speak to his attorney before he finally waived that right and consented to take the breath test. As a result, Braun was required to afford defendant a "reasonable opportunity to obtain legal advice." The state must establish that defendant was afforded that opportunity, and, to do so, must prove both that the inmate phone was operational and, because defendant was handcuffed, that Braun was able to use it for him. Absent either circumstance, defendant would have had *no* realistic opportunity, let alone a reasonable opportunity, to contact his attorney, given that he was prohibited from using his cell phone and had to rely solely on Braun to place the call. The trial court did not expressly address those factual questions. We presume, however, that the court found that the phone was operational, because that finding is consistent with the court's ultimate conclusion that defendant was afforded a reasonable opportunity and there is evidence in the record to support it—*i.e.*, admitted hearsay evidence that the jail staff told Braun that the phone was working.

We agree with defendant, however, that the evidence in the record does not support a finding that Braun was able to use the inmate phone properly. Braun testified that he had never used the inmate phone before and that he was unable to identify and understand the significance of the tones that he heard. He proffered two theories as to why the calls that he attempted to make on defendant's behalf did not

go through: he testified that he did not know whether those calls were unsuccessful because the lines that he was attempting to reach did not accept collect calls (despite the fact that one of those lines was a landline) or because the phone itself was not working. The state adduced no additional evidence regarding Braun's ability to operate the phone. Thus, because the only evidence in the record indicates that Braun did not know how to use the phone properly, we agree with defendant that the state has not met its burden to show that defendant was afforded a reasonable opportunity to consult with counsel before consenting to the breath test. The only "opportunity" he had was an offer, which he could not accept because he was handcuffed, and which Braun, apparently, did not know how to effect.

Furthermore, even that "opportunity" was not legally sufficient, because it did not include confidentiality. Defendant was never informed that he would be allowed to speak with an attorney privately and, because he was handcuffed, he could reasonably have concluded that Braun was planning to remain in the room to help him place the call and speak into the phone. Thus, when defendant ultimately decided to forgo consultation with an attorney, that decision did not amount to a valid waiver, that is, a voluntary and intelligent relinquishment of his *known* right to a private consultation. *Sawyer*, 221 Or App at 354 (citing *State v. Acremant*, 338 Or 302, 321, 108 P3d 1139, *cert den*, 546 US 864 (2005)).

Reversed and remanded.