Argued and submitted November 27, 2012, reversed and remanded July 3, 2013

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## CELSO AVILA-NAVA,
*Defendant-Appellant.*

Washington County Circuit Court
C092845CR; A146527

306 P3d 752

Jedediah Peterson, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Christina M. Hutchins, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

HASELTON, C. J.

**HASELTON, C. J.**

Defendant, who was convicted of first-degree burglary, ORS 164.225; first-degree robbery, ORS 164.415; first-degree kidnapping, ORS 163.235; unlawful use of a weapon, ORS 166.220; and unauthorized use of a motor vehicle, ORS 164.135, appeals, challenging all of his convictions. He assigns error solely to the trial court's admission of statements that he contends were unlawfully elicited after he had invoked the right to remain silent. The state remonstrates that defendant's invocation was equivocal. The state argues, in the alternative, that, even if defendant's statement constituted an unequivocal invocation of his right to remain silent, the interrogating officer's interactions with defendant after that invocation were constitutionally permissible. We conclude that defendant unequivocally asserted his right to remain silent and that the interrogating officer's questions following that assertion violated defendant's right against self-incrimination. Or Const, Art I, § 12.[1] Accordingly, the trial court erred in admitting defendant's statements; we further determine that the erroneous admission of defendant's statements was not harmless, and, thus, we reverse and remand.

We explained the applicable standard of review in *State v. Holcomb*, 213 Or App 168, 173, 159 P3d 1271, *rev den*, 343 Or 224 (2007):

> "The admissibility of a defendant's statements during custodial interrogation is an issue of law. *State v. James*, 339 Or 476, 481, 123 P3d 251 (2005). We review the trial court's legal conclusion regarding whether a defendant invoked his Article I, section 12, right for legal error. *State v. Terry*, 333 Or 163, 172, 37 P3d 157 (2001), *cert den*, 536 US 910 (2002). The question of what transpired during a custodial interrogation is a question of fact for the trial court, and we are bound by the trial court's findings of fact if they are supported by evidence in the record, although 'we assess anew whether th[ose] facts suffice to meet constitutional standards.' *James*, 339 Or at 481."

(Brackets in *Holcomb*.)

---

[1] Article I, section 12, of the Oregon Constitution provides, in pertinent part, "No person shall * * * be compelled in any criminal prosecution to testify against himself."

We state the material facts consistently with those standards. On December 23, 2009, Hillsboro police officers, who were investigating a robbery in which defendant was a suspect, stopped an SUV that defendant was driving. At the scene of the stop, after defendant was handcuffed and taken into police custody, an officer read the *Miranda* warnings in Spanish from a prepared card to defendant, who did not speak English. Defendant indicated that he understood his rights. The police then transported defendant to the Hillsboro Police Department, where detectives Ganete and Hahn would interview him. Ganete again advised defendant of his *Miranda* rights in Spanish,[2] from a prepared card, translated by Ganete as follows:

> "It is my [duty] to inform you before you make a declaration: You have the right to remain silent. Anything you say may be used against you in a court of law or a judicial tribunal. You have the right to speak to an attorney and to [have him or her] present during the interrogation. If you do not have the funds to contract an attorney, the Court will assign one to you without cost."

After Ganete had advised defendant of his *Miranda* rights—defendant's second *Miranda* warning that day—Ganete inquired whether defendant understood those rights. Defendant replied, "I have a question. Do I have to answer your questions?" Ganete explained that defendant "did not have to answer any questions or talk to [Ganete] if he chose [not] to." Defendant then asked, "Why did mister call the police?" Ganete insisted that defendant needed first to understand the *Miranda* warnings before they could discuss the events that led to defendant being in police custody. At that point, "to help [defendant] understand," Ganete "took each right line by line and asked if he understood each right." During that process, the following exchange occurred:

> Ganete: "Anything you say may be used against you in a court of law."
>
> Defendant: "I don't understand what this means."
>
> Ganete: "What is it that you don't understand?"

---

[2] Ganete's exchange with defendant occurred entirely in Spanish. The account of their exchange is derived exclusively from Ganete's testimony at a pretrial evidentiary hearing.

Defendant:   "Anything I say can be used against me."

Ganete:   "That's correct. Anything you say can be used against you."

Defendant:   *"I won't answer any questions."*

(Emphasis added.)

Ganete "didn't accept [the italicized statement] as unequivocally [defendant] saying, 'I don't want to talk to you.'" Instead, Ganete interpreted defendant's statement "as a question that he was pondering to me from lack of understanding." Ganete asked defendant, *"Are you saying you don't want to talk to me at all? You just want me to go away?"* (Emphasis added.) Defendant responded, "No, I can't talk to you if I don't understand what this right means because you're telling me I have the right to remain silent. I don't understand what this means." As Ganete began to repeat, "Anything you say can be used against you," defendant interrupted, "Pardon. I'm not trying to be disrespectful. How can I say this? Anything I say can be used against me. It's like I'm lying?"

At that point, Ganete felt that defendant was "kind of hung up on this right," so Ganete decided to move on to the remaining warnings pertaining to defendant's right to counsel.[3] Defendant indicated that he understood his right to counsel. Ganete then asked if defendant understood his rights, with the exception of "anything you say can be used against you." Defendant responded, "That's exactly what I don't understand." Because he thought that defendant might understand the statement if he read it himself, Ganete inquired about defendant's education. Defendant responded that he had gone to school through sixth grade and that he could read Spanish. Ganete then gave defendant the *Miranda* warning card and asked him to read it aloud, which defendant did. The following exchange ensued:

Defendant:   "'It is my duty to inform you before you make a declaration: You have the right to remain silent.' [pause] You can just ask questions then?"

---

[3] Ganete explained that he moved on "because we were at this point where we weren't making any progress of understanding; so I thought that, 'Okay. We'll come back to that right afterwards and see if he would understand then.'"

Ganete: "If you tell me that you wish to remain silent, I can't question you."

Defendant: "Now I understand."

(Brackets in original.) Ganete further explained to defendant that there is a significant difference between wanting to speak with him and agreeing to speak with him. Ganete also told defendant that he "may choose to answer or not answer specific questions, and that was fine." This exchange followed:

Ganete: "Do you understand your rights?"

Defendant: "Yes."

Ganete: "Do you understand the *Miranda* warning card you read?"

Defendant: "Yes."

Ganete: "Do you want to speak with me freely?"

Defendant: "Yes."

Ganete then questioned defendant about the reported robbery, and defendant made the statements that are the subject of this appeal.[4]

In a pretrial motion, the state requested a hearing on the admissibility of statements made by defendant. ORS 135.037. At that hearing, defendant argued that the statements that he made after his statement, "I won't answer any questions," were obtained in violation of *Miranda* and, thus, must be suppressed. Specifically, defendant contended:

"[T]he conversation never should have continued after [defendant] said, 'I won't answer any questions.' That was him exercising his right to remain silent. And, for that reason, despite the fact that upon further prodding, [defendant did] agree to speak with the detective, I'd ask that his statements not be admitted for *Miranda* violation."

The state, for its part, contended that defendant had not unequivocally invoked his right to remain silent. Rather, in the state's view, defendant's statement, "I won't

---

[4] As described below, 257 Or App at 369, various of defendant's statements to Ganete were irreconcilable with the account that defendant rendered in his trial testimony—and, indeed, were demonstrably false.

answer any questions," was, "as the detective indicated, not an assertion of a right in the context of the conversation that was taking place, but rather a statement by defendant of questioning what those rights were." The state argued that, because that statement was "equivocal," Ganete was permitted to ask questions to clarify defendant's intent—and that, ultimately, defendant understood and voluntarily waived his rights.

The trial court agreed with the state's position that defendant's statement, "I won't answer any questions[,] * * * was posed as a quandary," and "defendant didn't quite understand what was going on at the time." The court observed that it did not believe that Ganete "was trying to manipulate defendant in the situation" and noted that Ganete "spent a lot of time with defendant making sure he understood his *Miranda* rights." The court continued, "The question is then did defendant waive his *Miranda* rights or was this comment, 'I won't answer any questions,' an unequivocal exercise of his *Miranda* rights? And that's where I say I think in the totality of the facts that it's not an unequivocal exercise of rights." Accordingly, the court determined that Ganete's ensuing questions—including, "Are you saying you don't want to talk to me at all?" and "You just want me to go away?"—did not violate defendant's rights and allowed defendant's subsequent statements to be admitted.

Defendant testified at trial and the state impeached him by pointing to material inconsistencies between defendant's trial testimony and his statements during interrogation. Specifically, in response to the prosecutor's questions during cross-examination, highlighting those inconsistencies, defendant admitted that he had "lied" to Ganete during the interrogation. The prosecution's case was predicated on the testimony of the robbery complainants, who recounted defendant's purported criminal conduct. Thus, an assessment of defendant's credibility was essential to the jury's consideration—indeed, in closing, the prosecutor told the jury that, "if you believe the victims in this case, the defendant is guilty * * *. If you believe the defendant, then he is not guilty." The jury found defendant guilty as charged.

Defendant appeals his convictions, challenging the admission of the statements that he made in response to interrogation. Defendant contends, as he did before the trial court, that he had unequivocally invoked his right to remain silent when he said that he would not answer any questions, and, thus, his subsequent statements should have been suppressed. Defendant argues that the trial court's "finding" that his statement "I won't answer any questions" was not an unequivocal invocation of his right to remain silent was not supported by the evidence, and that "police cannot avoid the *Miranda* requirements by choosing whether to accept a defendant's statement."

The state responds that defendant did not unequivocally invoke his right to remain silent; rather, "defendant was attempting to understand his *Miranda* rights." In any event, the state argues, even if defendant had unequivocally invoked his right to remain silent, "Ganete was entitled to continue to explain defendant's *Miranda* rights." Put differently, and in perhaps a more nuanced way, the state contends that the "clarification about whether defendant understood his rights" was not "custodial interrogation" and, therefore, Ganete's continued questioning of defendant did not violate his right against self-incrimination.

In *State v. Harding*, 221 Or App 294, 300-01, 189 P3d 1259, *rev den*, 345 Or 503 (2008), we outlined the applicable inquiry for assessing whether an accused's right against self-incrimination was violated during custodial interrogation:

"Under Article I, section 12, police must stop interrogation when a suspect in police custody unequivocally invokes the right to remain silent. *State v. Meade*, 327 Or 335, 339, 963 P2d 656 (1998). However, police may reinitiate contact with a defendant who has invoked that right, give new *Miranda* warnings, and obtain a valid waiver of the right after a reasonable period of time has elapsed. *State v. Holcomb*, 213 Or App 168, 174, 159 P3d 1271, *rev den*, 343 Or 224 (2007) (citing *State v. Rowe*, 79 Or App 801, 805-06, 720 P2d 765, *rev den*, 302 Or 86 (1986)). When a suspect makes an equivocal invocation of the right to silence, police are required to ask follow-up questions to clarify what the suspect meant before proceeding with interrogation. [*State v.*]

*Charboneau*, 323 Or [38,] 54, [913 P2d 308 (1996)]. In determining whether a defendant's statement is an unequivocal or equivocal invocation, or neither, we view the statement in light of the totality of the circumstances at and preceding the time that it was made, 'to ascertain whether a reasonable officer in the circumstances would have understood that defendant was invoking his rights.' *Holcomb*, 213 Or App at 176."

(Footnote omitted.)

Applying those principles, and with the parties' arguments so joined, we first must determine whether a reasonable officer in the circumstances would have understood defendant's statement—"I won't answer any questions"—to be an unequivocal invocation of defendant's right to remain silent. As explained, if defendant's statement was equivocal, then the officer was permitted—indeed, required if the interrogation was to continue—to ask follow-up questions to clarify defendant's intent. If, however, defendant unequivocally invoked, the scope of the officer's subsequent statements to defendant is much narrower. The state's secondary, alternative argument requires us to examine the contours of that proscription.

We first conclude that defendant's statement—"I won't answer any questions"—was an unequivocal invocation of his right to remain silent. The words that defendant used were unambiguous; that is, they were susceptible to only one reasonable understanding—an unqualified declaration that defendant would not answer any questions. Ganete's contrary understanding—that defendant's words, immediately after Ganete reiterated that "[a]nything you say can be used against you," were a "question" inviting further inquiry—was not reasonable. *See State v. Dahlen*, 209 Or App 110, 118, 146 P3d 359, *modified on recons*, 210 Or App 362, 149 P3d 1234 (2006) ("A reasonable officer would interpret [the] defendant's words consistently with their ordinary meanings and would not understand the defendant to say something he did not actually say."); *see also State v. Kell*, 303 Or 89, 99, 734 P2d 334 (1987) (citing *Connecticut v. Barrett*, 479 US 523, 529, 107 S Ct 828, 93 L Ed 2d 920 (1987) ("Interpretation is only required where

the defendant's words, understood as ordinary people would understand them, are ambiguous.")).

Further, we agree with defendant that "police cannot avoid the *Miranda* requirements by choosing whether to accept a defendant's statement." Here, the trial court improperly relied on Ganete's unreasonable decision not to accept defendant's unambiguous statement as an unequivocal invocation of his right to remain silent.

Nor can any of the interaction between Ganete and defendant serve to render defendant's unequivocal invocation retroactively equivocal. Again, the determination of whether a statement is "an unequivocal or equivocal invocation" is based exclusively on "the totality of the circumstances *at and preceding the time that it was made.*" *Harding*, 221 Or App at 301 (emphasis added); *accord Smith v. Illinois*, 469 US 91, 98-99, 105 S Ct 490, 83 L Ed 2d 488 (1984) (explaining that "[u]sing an accused's subsequent responses to cast doubt on the adequacy of the initial request *itself* is * * * intolerable," because "[n]o authority, and no logic, permits the interrogator to proceed * * * on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all" (internal quotation marks omitted; emphasis in original)). Here, nothing that preceded defendant's invocation "casts any doubt" on the meaning and effect of defendant's declaration. Accordingly, the trial court erred in characterizing defendant's declaration as, at best, an equivocal invocation.

As we explained earlier, our analysis does not end with the conclusion that defendant unequivocally invoked his right to remain silent. The state contends that, even in the face of such an invocation, an officer is permitted to complete the *Miranda* warning and to ask questions aimed at determining whether defendant understands his rights.

It may well be that, even after an unequivocal invocation, an officer may continue to advise an accused of the remaining *Miranda* warnings. Nevertheless, we need not resolve that question here because, in all events, Ganete did

not limit himself to merely completing the reiterated advice of *Miranda* rights. Rather—and without *any* intervening voluntary reinitiation on defendant's part—Ganete asked defendant questions pertaining to his invocation. Specifically, Ganete's questions "Are you saying you don't want to talk to me at all?" and "You just want me to go away?" were the sorts of "clarifying" questions permissible only with respect to an *equivocal* invocation. *See, e.g., Charboneau,* 323 Or at 54. Such "follow up" is expressly precluded with respect to unequivocal invocations. *State v. Isom,* 306 Or 587, 593, 761 P2d 524 (1988) (explaining that Article I, section 12, requires that, upon an unequivocal invocation, "questioning not only 'should' but must cease"). The continuation of the interaction, which flowed from Ganete's constitutionally precluded questioning, culminated in defendant's agreement to answer Ganete's questions regarding his possible criminal involvement. That is, defendant's ultimately inculpatory statements were the product of the constitutional violation.[5]

Finally, we must assess whether that error was harmless. Or Const, Art VII (Amended), § 3 ("If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"); *see Holcomb,* 213 Or App at 182-83 (analyzing whether erroneous admission of the defendant's statements required reversal of the defendant's convictions, even in the absence of any party arguments regarding harmlessness). In assessing harmlessness, the pertinent inquiry is "whether there was little likelihood that the error affected the jury's verdict." *State v. Davis,* 336 Or 19, 32, 77 P3d 1111 (2003). As noted, 257 Or App at 369, admission of the challenged statements provided the state an opportunity to impeach defendant in a case in which defendant's credibility was vital to his defense. Thus—and the state does not contend otherwise—the admission of

---

[5] The state does not assert that defendant reinitiated contact with the police or that a reasonable period of time had elapsed after the invocation so that Ganete was permitted to give defendant new *Miranda* warnings and seek a waiver of defendant's rights.

those statements was not harmless. *See, e.g.*, *State v. Irons*, 162 Or App 512, 524, 987 P2d 547 (1999) (holding that erroneous admission of evidence tending to affect "the jury's all-important assessment of credibility" was not harmless).

Reversed and remanded.